## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

PERKINS v. HERRING.

March 10, 1910.

Absent, Buchanan, J.

1. SPECIFIC PERFORMANCE—*Reformation—Mistake—Burden of Proof—Case in Judgment.*—If, on a bill filed for the specific performance of a contract for the sale of land, the defendant sets up the defense of mistake in the contract sued on, and asks that it be reformed before enforcement, the burden is on the defendant to prove the alleged mistake by clear, convincing and satisfactory evidence. If the proof is confused, conflicting, and contradictory, relief will not be granted unless the mistake appears clearly and positively in spite of the conflict, and justice requires correction. In the case in judgment, the evidence of mistake is not such as to warrant relief on that account.

Appeal from a decree of the Circuit Court of Louisa county. Decree for defendant. Complainant appeals.

*Reversed.*

The opinion states the case.

*Jas. Lee Shelton* and *Wm. E. Bibb,* for the appellant.

*F. Wilmer Sims,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

This suit was brought by the appellant to compel specific performance of the following contract:

"Be it know to all men that G. E. Herring of the first part and Otis Perkins of the second part enter into agreement, to-

wit: G. E. Herring . . agrees to sell to Otis Perkins the Cherry Hill house tract of land, containing 163 acres, for the sum of $1,250, and to hold the same until 1st of September, 1907, when Otis will take possession and make the first payment, and Otis Perkins . . agrees to take the said tract and as evidence of his good faith in this contract he has paid to said G. E. Herring $50, and will pay $50 more soon as evidence. Given under our hands and seal this 8th day of November, 1906.

"G. E. HERRING.    (Seal.)
"OTIS PERKINS.    (Seal.)"

The bill alleges an offer to pay and readiness to pay the residue of the purchase money.

The appellee, Herring, held the land in controversy and an adjoining tract containing 104 acres, in his own right and as executor and trustee under the will of Oscar Herring, deceased, by virtue of two deeds from a special commissioner, dated respectively, September 26, 1887, and March 21, 1891. Both deeds refer to and are based upon the Hart survey and map, which gives the metes and bounds, and shows the relative position of each tract. These lands were formerly owned by Oscar Herring, and were known as the "Cherry Hill" farm. On September 11, 1906, by contract in parol, the appellee agreed to sell the 104 acres of land to T. J. Jones for $700. The only written memorandum of the latter sale is found in the following receipt:

"Received, September 11, 1906, of Thos. L. Jones fifty dollars on the purchase price of 104 acres of land of the 'Cherry Hill" farm. This land lies west of the road leading from R. E. Perkins toward Apple Grove.

"G. E. HERRING."

The road referred to is known as the "Road to Frederick Hall."

Herring resisted the demand for specific performance on the ground that at the dates of his contract with Jones and the plain-

tiff he was laboring under the mistaken impression that the "Road to Frederick Hall" was the true dividing line between the two farms, and that he had contracted with both parties upon that theory, but had since ascertained that 21 8-10 acres of the 163 acre tract lay west of that road. He, therefore, insisted that his agreement with the plaintiff ought to be reformed in accordance with the understanding of the parties, and that Perkins should be put upon terms and required either to accept the portion of the 163 acre tract lying on the east side of the "Road to Frederick Hall," with an abatement *pro tanto* of the purchase price for the deficiency in acreage, or else that his bill should be dismissed.

The plaintiff controverted the defendant's pretension, but the circuit court adopted that theory and decreed accordingly.

In that aspect of the case it will be observed that the defendant is asking reformation of the preliminary agreement for the sale of the 163 acre tract on the ground of a mistake of fact with respect to its western boundary. The burden of proof consequently rests upon the defendant to establish the alleged mistake.

In 34 Cyc. 984, discussing the general doctrine of the weight and sufficiency of evidence to entitle the plaintiff to relief in a suit for the reformation of a written instrument on the ground of mistake, it is said: "The courts are not entirely uniform as to what amount of evidence is sufficient to warrant reformation. In the language of some cases, 'a preponderance of the evidence is all that is required' . . ; but many cases have held that a mere preponderance of evidence is insufficient. Still other courts require the proof to be established 'beyond a reasonable doubt.' The majority of cases, however, seem to agree on the proposition that the evidence must be clear, convincing and satisfactory."

The majority rule obtains in this jurisdiction. *Carter* v. *McArtor*, 28 Gratt. 356; *Pulaski Iron Co.* v. *Palmer*, 89 Va. 384, 16 S. E. 275; *Donaldson* v. *Levine*, 93 Va. 472, 25 S. E.

541; *Bibb* v. *Am. Coal and I. Co.,* 109 Va. 261, 64 S. E. 32; *Percy, &c., Trustees,* v. *First Nat. Bank of Louisa, Ky., ante,* p. 129, 65 S. E. 475.

As the result of the foregoing principle we find the following statement of the rule in 34 Cyc. 988: "When the proof is confused, conflicting, and contradictory, relief will not be granted, except the mistake appear clearly and positively in spite of the conflict, and justice requires correction."

It is sufficient to say of the evidence as a whole, that the preponderance is in favor of the appellant, and that the evidence on behalf of the appellee falls far short of the standard required by the authorities. We are also of opinion that the appellee's theory of the case is in conflict with the underlying circumstances attending the transaction, which furnish internal evidence of the fact that his contention is not well founded. He is a farmer of mature age, and had held continuous possession of these farms for many years. The muniments of title (the commissioners' deeds and the Hart survey and map, which were all in his custody) furnish unmistakable information, both of the acreage and metes and bounds of the two tracts. The "Road to Frederick Hall," plainly lettered as such, is clearly defined on the Hart map, and the most casual inspection of that paper shows that the 163 acres lie on both sides of the road.

Besides, the language of the defendant's contract with the plaintiff and his receipt to Jones demonstrate that in their preparation these muniments of title were the source of his information, and that he possessed conscious knowledge of what they contained.

It also appears that if the defendant's contention should prevail it would necessitate a material reformation of both contracts. Jones would take 21 8-10 acres of land more than he either bought or agreed to pay for, while the plaintiff, who admittedly purchased 163 acres, would receive only 141 2-10 acres.

In short, the entire theory of the appellee is lacking in coherency, and cannot be made to square with the circumstances and documentary evidence. Such a case presents no ground for relief in a court of equity.

For these reasons we are of opinion that the decree of the circuit court must be reversed, and specific performance of the agreement of November 8, 1906, decreed.

*Reversed.*