## Staunton.

## CHARLES, ET AL, V. CHARLES.

### September 16, 1920.

1. RESCISSION, CANCELLATION AND REFORMATION—*Mutual Mistake— Case at Bar.*—The granting clause of a deed conveyed a certain tract of land and in the warranty clause there was an exception of one-half of the minerals underlying the tract. In a suit for reformation brought by the grantors, the grantors contended that one-half of the underlying coal and minerals had been reserved for them, while the grantee contended that all the title and interest of the grantors in the land passed under the deed to him, but as there was doubt as to the grantors' title to one-half of the minerals, the warranty clause was worded so as not to cover this one-half interest in the minerals. The mistake, if any, was made by the scrivener of the deed, who was not examined as a witness, nor was his absence accounted for. The chief value of the land at the time of the conveyance consisted of the timber, and the coal was thought to be of little value.

   *Held:* That while there was evidence tending to support the grantors' claim, it was on the whole far from being clear and convincing.

2. RESCISSION, CANCELLATION AND REFORMATION—*Mutual Mistake— Jurisdiction of Equity.*—There is no doubt about the jurisdiction of a court of equity to reform an instrument so as to make it speak the real agreement of the parties where, because of mutual mistake, it fails to do so, but the evidence of such mistake must be clear, convincing and satisfactory.

3. RESCISSION, CANCELLATION AND REFORMATION—*Presumption in Favor of Contract or Agreement in Writing.*—When parties reduce their contracts or agreements to writing, acknowledge them before an officer, and cause or permit them to be spread upon the public records, in the absence of any evidence of fraud, there is a very strong presumption that they correctly set forth the understanding and agreement of the parties thereto. Courts of equity will not lightly set them aside.

4. RESCISSION, CANCELLATION AND REFORMATION—*Mistake of Scrivener.*—Courts of equity will not undertake to reform a deed on doubtful testimony as to a mistake by the scrivener.

5. RESCISSION, CANCELLATION AND REFORMATION—*Sufficiency of Evidence to Warrant Reformation.*—It has been said that "the existence of the mutual mistake must be conclusively established," but it is preferable to say that the evidence to establish a mutual mistake must be clear, convincing and satisfactory, and such as to leave no reasonable doubt upon the mind that the writing does not correctly embody the intention of the parties.

Appeal from a decree of the Circuit Court of Buchanan county. Decree for defendant. Complainants appeal.

*Reversed.*

The opinion states the case.

*W. A. Daugherty,* for the appellants.

*A. A. Skeen,* for the appellee.

BURKS, J., delivered the opinion of the court.

[1] This suit was brought by two brothers against another brother to reform a conveyance of one hundred and fifty acres of land made by the former to the latter on the ground of mutual mistake. The trial court dismissed the bill at the costs of the complainants, and from its decree this appeal was taken.

The only evidence in the case consisted of the deposition of the three brothers aforesaid and of one other brother, not connected with the transaction. The latter was given on behalf of the complainants, but is entitled to little weight, as it relates to vague and uncertain admissions of the defendant, with whom the witness admits he was on unfriendly terms. The mistake, if any, which is the founda-

tion of the suit was made by the scrivener of the deed, but he was not examined as a witness in the case nor was his absence accounted for, so that the case must be determined upon the testimony of the parties to the transaction.

The complainants D. M. Charles and Green Charles were the owners of a tract of 1130 acres of land in Buchanan county which had been conveyed to them in 1897 by the Tazewell Coal and Iron Co., and of this tract they conveyed 150 acres to the defendant by deed bearing date June 2, 1899, for the consideration of $150.00. The negotiations for the sale were conducted on the part of the vendors largely by Green Charles. He testifies that the negotiation took place "a few days ahead of making the deed" while the defendant says the deed was made "quite a little bit after that." When the parties came to make the deed, the grantors thought that one-half of the underlying coal and minerals had been reserved in the conveyance to them and so stated to the defendant, and they testify that they only sold him the surface and one-half of the underlying coal and minerals, and the defendant admits in his testimony that he told one of the vendors "if they did not own it, or it had been excepted to them, they couldn't make me a deed to something they did not own." This question of the exception to the grant appears not to have been mentioned at the time of the negotiations, but to have come up for the first time when the deed was made. At that time coal in place had little or no market value in that remote locality, and the complainants were induced to buy the 1130 acres on account of the timber that was on it, which constituted its chief value. James A. Chaney, a clerk in the store of Green Charles, and not a lawyer, prepared the deed in controversy and placed the exception in the warranty clause instead of the granting clause of the deed, because "that was the place he said to put the exceptions in." The deed is as follows:

"This deed made the 2nd day of June, in the year 1899, between Green Charles and Jane, his wife, D. M. Charles and Nancy, his wife, of the first part, and J. C. Charles of the other part. Witnesseth, that in consideration of one hundred and fifty dollars in hand paid $50.00 in cash, $100.00 by note the receipt is hereby acknowledged by parties of the first part, the said Green Charles and Jane, his wife, D. M. Charles and Nancy, his wife, of the first part, do grant unto the said J. C. Charles, party of the second part, all that piece or parcel of land lying in Buchanan county, and State of Virginia and lying on Home creek a tributary of the Louisa fork of the Big Sandy river and containing 150 acres, be the same more or less, being a part of the A. J. May land and bounded as follows; to-wit: * * *

"And the said Green Charles and Jane, his wife, D. M. Charles and Nancy, his wife, do covenant that they will warrant generally the property hereby conveyed that they have the right to convey the said land to the said J. C. Charles, with the following exceptions, to-wit: One-half of the coal and mineral on said land heretofore been sold; that the said J. C. Charles shall have quiet possession of said land free from incumbrances.

"Witness the following signatures and seals."

There is much testimony in the record as to what the parties intended by this deed. The complainants testify very positively that they never intended to convey anything but the surface and one-half of the underlying coal and minerals, and that they never discovered for some years after their deed to the defendant that no part of the coal and minerals had been reserved in the deed from the vendor, and that they claimed the ownership of half such coal and minerals, and that the defendant acknowledged their claim and several times endeavored to purchase the same of them. There seems to be no doubt that, at the time of the sale, the vendors thought either that they had no title to one-half

of the coal and minerals, or that their title thereto was doubtful, and Green Charles testifies that after they purchased the 1130 acres he was informed by J. H. Stinson that half of the coal and minerals had been excepted from the grant and that "we excepted the one-half so that if the other people did own there would be no kick a coming." The testimony of D. M. Charles is largely to the same effect except that he places the reservation in the deed to himself and Green at one-third interest of one-half of the underlying coal and minerals. The defendant, J. C. Charles also testified in the cause, and candidly admits that for six or eight years after his purchase he laid no claim to but half of the underlying coal and minerals, but states that he then for the first time ascertained that there had been no exception or reservation in the deed from the Tazewell Coal and Iron Co. to his brothers, and from that time on he continuously claimed the whole, and "I told them that the coal belonged to me." He states his position thus: "I thought I was getting all the interest they had in that 150 acres, let be half or all." He denies any admission by offer to purchase, but knowing that his brothers were claiming half of the coal and minerals he testifies, "I tried to adjust the matter and offered to pay them some amount, I disremember the amount, a time or two, that was before I found out the deed was. I didn't know at that time the exceptions was in the right place."

The evidence in this cause is too lengthy to be set out in full, but it presents a case that is not free from difficulty. If from any cause the parties did not intend to convey, and did not agree to sell one-half of the underlying coal and minerals, their agreement should be respected and enforced. But a careful consideration of the evidence leads us to believe that the grantors intended to convey and the grantee to purchase all of the interest of every kind that the grantors had in the land, and that the reservation was intended

to protect the grantors against a breach of warranty as to one-half of the underlying coal and minerals which they had been informed was not covered by their deed.    The deed in controversy plainly carries out this intent.    The coal had but little, if any market value, and as Green Charles himself testifies, the chief value of the land consisted of the timber that was ˚upon it.    Furthermore, the deed itself showed that exception was made because the "one-half of the coal and mineral on said land (had) heretofore been sold." In the face of this statement of the deed, the grantors could not deny that the reason for making the exception was the information they had that they had no title to the one-half, but they say that, no matter what their reason was, the agreement between the parties was that half of the coal and minerals was excepted from the grant, and not merely from the warranty, and they ask to have the deed reformed so as to conform to that agreement.    We cannot accede to the view that the exception was to be placed in the granting clause of the deed, and not in the warranty clause. The deed was prepared by the clerk of Green Charles, one of the grantors, and he could only have gotten his information as to what the agreement was from the parties themselves, and it is not probable he would have put anything in the deed prejudicial to the interest of his employer unless the latter had assented to it.    The deed itself bears internal evidence not only of the intelligence of the scrivener, but of skill in its preparation.    He was not called as a witness, nor was his absence accounted for.    Here then was a third person undertaking to reduce to writing the agreement the parties had reported to him, and he places the exception in the warranty clause and not in the granting clause of the deed.    From the language used in the deed he must have understood the parties to agree to convey the whole, and not only so, but to "warrant generally" the title to the whole except as to one-half of the coal and minerals which

77

had been theretofore sold to some one else. Nor did the location of the exception in the deed escape the attention of the parties at the time the deed was executed. Evidently Green Charles, or some one else called the attention of the scrivener to the location of the exception, and enquired if that carried out the agreement, for Green when asked "Do you know why Mr. Chaney wrote this exception in the warranty of the deed instead of in the body or granting clause of the deed?" replied: "That was the place he said to put the exceptions in." The deed, as executed, accords exactly with the contention of the defendant as to what the agreement was. It is true he stated in his testimony that if the grantors did not own half the coal and minerals they "could not convey something they did not have," but this probably meant only that they could not make good title to it, for he distinctly testifies "I thought I was getting all the interest they had in that 150 acres, let be half or all." If the agreement was as contended for by the grantee a skilled attorney could hardly have improved on that deed to carry the agreement into effect.

[2-5] There is testimony in the cause which in some aspects, tends strongly to support the appellants' claim, but the evidence as a whole is far from being clear and convincing that the agreement was what they contend for. There is no doubt about the jurisdiction of a court of equity to reform an instrument so as to make it speak the real agreement of the parties where, because of mutual mistake, it fails to do so, but the evidence of such mistake must be clear, convincing and satisfactory. When parties reduce their contracts or agreements to writing, acknowledge them before an officer, and cause or permit them to be spread upon the public records, in the absence of any evidence of fraud, there is a very strong presumption that they correctly set forth the understanding and agreement of the parties thereto. Courts of equity will not lightly set them

aside.  They will not undertake to reform a deed on doubt-
ful testimony as to a mistake by the scrivener.  In West
Virginia and other States it has been held that the alleged
mutual mistake must be proved beyond a reasonable doubt.
*Brown & Hill* v. *McCabe,* 72 W. Va. 105, 77 S. E. 538;
*Stevens* v. *Johnson,* 72 W. Va. 434, 78 S. E. 377; 34 Cyc.
984.  In the majority of the States, including this State,
it is held that the evidence must be clear, convincing and
satisfactory.  In *Bibb* v. *Amer. Coal Co.,* 109 Va. 261, 264,
64 S. E. 32, 34,  it is said, "the existence of the mutual mis-
take must be conclusively established," but we prefer the
statement of both earlier and later cases that it must be
clear, convincing, satisfactory, and such as to leave no rea-
sonable doubt upon the mind that the writing does not cor-
rectly embody the intention of the parties.  *Holland* v.
*Vaughan,* 120 Va. 324, 91 S. E. 122; *Perkins* v. *Herring,*
110 Va. 822, 67 S. E. 515, 19 Ann. Cas. 342; *Percy* v. *First
Natl. Bank,* 110 Va. 129, 65 S. E. 475; *Beach* v. *Bellwood,*
104 Va. 170, 51 S. E. 184; *Donaldson* v. *Levine,* 93 Va. 472,
25 S. E. 541; *Carter* v. *McArtor,* 28 Gratt. (69 Va.) 356;
34 Cyc. 984.

The evidence in the case in judgment is not of this char-
acter, and for this reason the decree of the circuit court
must be affirmed.

*Affirmed.*