Syllabus.

Staunton.

GREEN CHARLES V. GEORGE W. McCLANAHAN, ET ALS.

September 22, 1921.

Absent, Burks, J.

1. MERGER—*Contracts—Deeds—Prior Understandings Merged in Former Contract.*—In the absence of fraud or mistake in the instrument itself, the rule is universal, applicable to deeds as well as to all other contracts, that prior stipulations and understandings are mereged in the final and formal contract executed by the parties, and when a deed has been delivered and accepted as performance of·an antecedent contract to convey, the contract is merged in the deed.

2. REFORMATION OF INSTRUMENTS—*Proof Must be Clear and Convincing.*—In order to justify a court of equity in undertaking to correct a deed which the parties have accepted, the evidence must be clear, convincing and satisfactory.

3. REFORMATION OF INSTRUMENTS—*Deeds—Reservation of Minerals —Case at Bar.*—A deed expressly excepted from the conveyance one-half of the minerals underlying the tract conveyed. The grantee claimed that it was his purpose to buy and that it was the intention of the grantors to convey their entire interest in the land, and that the reservation as to the minerals was inserted because grantors mistakenly or fraudulently alleged that they only owned half.

   *Held:* That the grantee acquired no interest in the one-half of the minerals underlying the tract which was the subject of controversy, because the title thereto was expressly reserved, and hence he was not entitled to have his deed reformed by striking out the exception from the grant, of which he had full knowledge before the delivery of the deed, which he accepted as full and final performance of the contract.

4. REFORMATION OF INSTRUMENTS—*When Reformation not Necessary.*—It is not error to deny the prayer of a bill for the reformation and correction of a deed, where the deed sufficiently expresses the true and final agreement of the parties, and needs no correction or reformation, although the language might possibly need construction.

Opinion.

5. CLOUD ON TITLE—*Deed Conveying Entire Tract Without Reserva-aation of One-Half not Owned by Grantors.*—A deed which undertakes to convey an entire tract without the reservation of the half of the minerals not owned by the grantors, but the property of a third party, constitutes a cloud on the title of such third party to the one-half of the minerals.

6. MERGER—*Rights of Vendee when Deed does not Conform to Prior Agreement—Waiver of Rights.*—If a vendee had rights under an original agreement for sale, he could have refused a deed tendered to him not covering such rights and either recovered the purchase money or enforced his rights in a suit for specific performance. Where he did neither, but accepted the deed as a satisfactory performance of the contract of sale, and made no claim for seventeen years thereafter, he must be held to have waived every claim which is inconsistent with the provisions of the deed.

Appeal from a decree of the Circuit Court of Buchanan county. Decree for defendants. Complainants appeal.

*Reversed.*

The opinion states the case.

*W. A. Daugherty,* for the appellants.

*Williams & Combs,* for the appellee.

PRENTIS, J., delivered the opinion of the court.

On September 5, 1901, Green Charles and wife and D. M. Charles and wife conveyed a certain tract of land to George W. McClanahan. So much of the granting clause as is necessary to recite reads thus: "The said parties of the first part do grant, bargain and sell unto the said George W. McClanahan, all that certain piece or parcel of land situate in Buchanan county, Virginia," (here follows a proper description of the land) "containing 20 acres, the same more or less. (One-half of the mineral is excepted from this conveyance.)" Then follows a covenant of special warranty, with the usual Virginia statutory covenants of title.

On June 21, 1910, D. M. Charles and wife conveyed to Green Charles all of their undivided interest in a large tract of land, excepting therefrom the twenty acres which had been conveyed to George W. McClanahan, and including therein all coal and other mineral which had been excepted from the McClanahan deed and in four other conveyances, fully identified. Then on July 16, 1918, McClanahan and wife conveyed to their son, Wilson McClanahan, the twenty acres of land which had been thus conveyed to him in 1901, without making any reservation of the mineral rights. Thereafter, in May, 1920, Green Charles instituted this suit. Its objects were, (a) the correction and reformation of the deed from Green Charles and D. M. Charles to George W. McClanahan of September 5, 1901, and (b) the vacation and annulment of the deed from George. W. McClanahan and wife to Wilson McClanahan, of July 16, 1918, in so far as it purports to convey one-half of the coal and minerals underlying the twenty acres of land thereby conveyed, upon the ground that this deed constitutes a cloud upon the complainant's title to such one-half of such coal and minerals."

The pertinent facts as to the original conveyance from Charles to McClanahan are, that at the time the grantors did not think that they owned but half of the coal and mineral underlying the tract (though Green Charles denies this). The claim on the part of McClanahan is, that it was his purpose to buy and the intention of the grantors to convey their entire interest in the land; and he filed an answer which he asked to be read as a cross-bill, praying that his deed be reformed so as to carry out this intention.

It is manifest, however, that even if the grantors were mistaken in thinking that they did not own all of the minerals, it is nevertheless true, and is clear from the testimony, that when they came to execute the deed, it was explicitly and distinctly understood that the title to one-half of the minerals thereunder was not to be conveyed. There

was no mistake of the draftsman in drawing the deed, nor was there any mistake or misunderstanding between the parties as to the property which the deed conveyed and as to the estate in the minerals therein which were reserved. The precise form of the deed grew out of the ignorance of both the grantors and the grantee as to the true estate which the grantors owned prior to the conveyance.

[1] We must first determine, then, in this case, the true effect and proper construction to be put upon the original conveyance of twenty acres here involved. McClanahan claims that it was the previous understanding that he was to have the entire estate therein which the grantors owned. In the absence of fraud or mistake in the instrument itself, the rule is universal, applicable to deeds as well as to all other contracts, that prior stipulations and understandings are merged in the final and formal contract executed by the parties, and when a deed has been delivered and accepted as performance of an antecedent contract to convey, the contract is merged in the deed.

In *Slocum* v. *Bracy*, 55 Minn. 249, 56 N. W. 826, 43 Am. St. Rep. 499, it is said that "no rule of law is better settled than that where a deed has been executed and accepted as performance of an executory contract to convey real estate, the contract is *functus officio,* and the rights of the parties rest thereafter solely on the deed."

[2] The question has been considered very recently by this court in two cases. In *Charles* v. *Charles,* 127 Va. 610, 104 S. E. 823, 825, in which it was held that there was no reservation of title to certain minerals claimed by the grantor because the language relied upon there, which was in the clause relating to covenants, was insufficient to create such a reservation. It followed, therefore, that the grantee took the entire estate of the grantors under the express language of the deed in the granting clause. This is said: "When parties reduce their contracts or agree-

ments to writing, acknowledge them before an officer, and cause or permit them to be spread upon the public records in the absence of any evidence of fraud, there is a very strong presumption that they correctly set forth the understanding and agreement of the parties thereto. Courts of equity will not lightly set them aside." And the doctrine is there stated to be that in order to justify a court of equity in undertaking to correct a deed which the parties have accepted, the evidence must be clear, convincing and satisfactory, and the pertinent cases are there cited.

In *Woodson* v. *Smith & Johnson*, 128 Va. 652, 104 S. E. 794, this is said: "Doubtless, many cases may arise in which distinct and unperformed stipulations contained in a contract for sale will not be merged in or discharged by deed where that instrument is silent upon the subject of such stipulations. In such cases, there is no conflict between the contract and the deed. But the deed must be regarded as the sole and final expression of the agreement between the parties as to every subject which it undertakes to deal with. All inconsistencies between the prior contract and the deed must be determined by the latter alone, and previous negotiations or agreements, verbal or written, cannot be set up for the purpose of contradicting it. The application of these principles may result in occasional hardship and occasional failure to carry out the real intention of the parties; but the principles themselves are safe and sound, they have been shown by experience to promote justice and fair dealing in the average case, and they are, for these reasons, abundantly supported by authority." Citing *Portsmouth Refining Co.* v. *Oliver Refining Co.*, 109 Va. 513, 64 S. E. 56, 132 Am. St. Rep. 924; *Stephen Putney S. Co.* v. *R., F. & P. R. Co.*, 116 Va. 211, 81 S. E. 93; 2 Devlin on Deeds (3d ed.), sec. 850a; 13 Cyc. 616; 8 Ruling Case Law, p. 1048, sec. 102; note to *Clifton* v. *Jackson Co.*, 16 Am. St. Rep. 622.

[3] Applying this undoubted rule to the facts of this case it seems to us perfectly clear that the prayer of the cross-bill is without merit, and that McClanahan, the grantee under the original deed, acquired no interest in the one-half of the minerals underlying the tract which is the subject of this controversy, because the title thereto is expressly reserved, and hence he is not entitled to have his deed reformed by striking out the exception from the grant, of which he had full knowledge before the delivery of the deed and which he accepted as full and final performance of the contract.

The trial court dismissed the complainant's bill upon the ground, to use the language of the decree, "that the equities are with the defendants"—that is, the decree refused to grant the prayer of the bill for the correction and reformation which was prayed for by the complainant, Charles, and also denied his prayer that so much of the deed from George W. McClanahan to his son, Wilson McClanahan, of July 16, 1918, as purports to convey the one-half of the coal and minerals underlying the tract which had been excepted from his conveyance, because it constituted a cloud upon his (Charles) title.

[4] We think that the court correctly denied the prayer of the bill for the reformation and correction of the original deed, because the deed expressed sufficiently the true and final agreement of the parties, and needs no correction or reformation. It expressly excepts from the operation of the conveyance one-half of the minerals. As this expressed the understanding of the parties when the instrument was delivered, the complainant is not entitled to any such relief. The language may possibly need construction, though its meaning to us seems clear. The evidence shows that the only mineral which can be profitably mined in that locality is coal, and that in reserving the minerals, the parties had coal in mind. The language, however, is comprehensive

and includes one-half of all mineral substances which may underlie the property which may profitably be mined without impairing the rights of the owner of the surface.

[5] The complainant also alleged that the deed of July 16, 1918, from George W. McClanahan and wife to their son, Wilson McClanahan, constituted a cloud upon his title, because it undertook to convey the entire tract without the reservation of the half of the minerals which the complainant owned and the court refused to grant this relief.

We are of opinion that this constitutes harmful error, and that this relief should have been granted. Under our construction of the original deed to McClanahan, he has no title to the half of the minerals which was reserved, and it appears from this record that the complainant, Green Charles, is now the sole owner of the estate which was thus reserved. The deed from George W. McClanahan and wife to Wilson McClanahan does, therefore, constitute a cloud upon his title, which he is entitled to have removed.

The equitable doctrines referred to in the dissenting opinion are not controverted. We cannot, however, apply them to the facts appearing in this record, for we find no evidence of fraud on the part of the appellant, Charles. He testifies that at the time of the original contract the reservation of the minerals was made, saying with reference thereto that he told McClanahan "in the beginning that we would except one-half of it;" and that he "also told him when we made the deed that we would except one-half of it." This version of the original contract is strikingly confirmed by the testimony of McClanahan himself, for in his cross-examination this question and answer appear:

"Q. Then at the time you bought and at the time you accepted this deed, you bought the surface and one-half of the coal and mineral underlying this tract, didn't you?

"A. That is what I bought."

[6] If McClanahan had the rights under the original

agreement which he now claims, he could have refused the deed which was tendered and either recovered the purchase money, $25, or enforced his rights in a suit for specific performance. As he did neither, but accepted the deed as a satisfactory performance of the contract of sale, and made no such claim for seventeen years thereafter, he must be held to have waived every claim which is inconsistent with its provisions.

Our conclusion, therefore, is to reverse the decree of the trial court and enter a decree here cancelling, vacating and annulling the deed from George W. McClanahan and Jemima McClanahan, his wife, to Wilson McClanahan, dated July 16, 1918, in so far as that deed purports to convey one-half of the coal and minerals underlying the twenty acres of land embraced in and conveyed by that deed, and removing the cloud thereby created upon the appellant's title to one-half of the coal and minerals underlying the tract.

*Reversed.*

SIMS, J., dissenting:

I cannot concur in two of the holdings of the majority opinion, namely: (a) That the defendant, George W. McClanahan, is not entitled to have the deed to him from Green Charles and D. M. Charles, of date September 5, 1901, reformed, as prayed for in the answer of such defendant, by striking therefrom the clause therein which is as follows, to-wit: "(one-half of the mineral is excepted from this conveyance)," so as to make the deed conform in its subject matter with the contract of purchase which was entered into between said defendant and such grantors prior to the execution and delivery of the deed; and (b) that the deed from such defendant and wife to their son, Wilson McClanahan, of date July 16, 1918, should be cancelled, vacated and annulled in so far as it purports to convey one-

87

half of the coal and minerals underlying the land conveyed by such deed.

The correctness of both of these holdings depends upon the correctness of the holding first mentioned.

As I understand the opinion, it does not affirmatively decide whether the evidence does or does not establish that the contract of purchase differed from the deed in that the contract of purchase contained no reservation of any mineral interest, whereas the deed did contain the reservation aforesaid, nor does the opinion affirmatively decide whether such reservation in the deed was or was not occasioned by the mutual mistake of both the grantors and the said defendant grantee in thinking at the time the deed was executed and delivered that the grantors owned only a half interest in the minerals (meaning coal and other minerals), underlying the land, or by such mistake on the part of the grantee, induced by the fraudulent representation of the grantors. But the opinion takes the following position, namely (I quote from the opinion) :

"* * * that even if the grantors were mistaken in thinking that they did not own all of the minerals, it is nevertheless true, and is clear from the testimony, that when they came to execute the deed, it was explicitly and distinctly understood that the title to one-half of the minerals thereunder was not to be conveyed. There was no mistake of the draftsman in drawing the deed, nor was there any mistake or misunderstanding as to the property which the deed conveyed and as to the estate in the minerals therein which were reserved. The precise form of the deed grew out of the ignorance of both the grantors and the grantee as to the true estate which the grantors owned prior to the conveyance.

"We must first determine, then, in this case, the true effect and proper construction to put upon the original conveyance of the twenty acres here involved. McClanahan

claims that it was the previous understanding that he was to have the entire estate therein which the grantors owned. In the absence of fraud or mistake in the instrument itself, the rule is universal, applicable to deeds as well as to all other contracts, that prior stipulations and understandings are merged in the final and formal contract executed by the parties, and when a deed has been delivered and accepted as performance of an antecedent contract to convey, the contract is merged in the deed." Then follows the citation of a number of cases to sustain such position.

This position, as I understand it, is this: If it be *assumed* that the contract of purchase was of the land and *all* mineral interests, and that when the deed came to be made subsequently, the clause reserving one-half of the mineral interest, which is at variance with the contract of purchase, was inserted in it solely because of the mutual mistake of the grantors and grantee in thinking at the time that the grantors did not own such one-half interest, nevertheless the grantee is bound by the deed as it stands, since the language employed in it is the precise language intended at the time by both grantors and grantee to be so employed, there being no mistake of the draftsman in drawing the deed. Such position, as it seems to be, is in direct conflict with the well settled doctrine on the subject.

As said in 2 Pomeroy's Eq. Jur. (3rd ed.), sec. 853: "All mistakes of fact in agreements executed or executory, express or implied, must be either concerning the subject matter or the terms. In the first case the terms are stated according to the intent of both the parties, but there is an error of one or both in respect of the thing to which those terms apply—its  *  *  *  title  *  *  *  and the like  *  *  *."

The case before us belongs to the first class of cases mentioned in the quotation just made. The error under con-

sideration concerns the subject matter of the contract, not the terms (*i. e.*, the language) intended to be used in the deed. There was no mistake in the language which was intended to be used in the deed; but the mistake of both grantors and grantee (or as we shall presently more specifically mention, the mistake of the grantee induced by the fraudulent representations of the grantors and so coupled with the fraud of the grantors) "prevented from being put into writing" in the deed the whole subject matter which was embraced in the contract of purchase and which but therefor would have been put into the deed. (3 Pomeroy's Eq. Jur., sec. 867.) In such case it is immaterial that there is no mistake of the draftsman in drawing the deed. As is well settled, a court of equity will reform a deed where, by reason of fraud or mutual mistake, the language, fully understood and intended to be used in the deed, either embraces "subject-matters which were not intended by the parties to come within its operation, in which case the parol evidence will show that such subject-matters should be omitted and the relief demanded will be a correction which shall exclude them * * *" or where the deed omits "certain subject-matters * * * which were intended by the parties to come within its operation; and in this case the parol evidence will show that such subject-matters should be included, and the relief demanded will be a modification of the writing, so that it shall embrace them and shall then extend its operation to particular subject-matters not mentioned in it, but to which it was originally intended to apply." See Pomeroy's Eq. Jur., sec. 865. The case before us is one in which the error prevented the terms of the deed from conveying the whole mineral interest embraced in the contract of purchase. Hence the case falls within the class of deeds last above mentioned.

As said by the same authority, section 866: "The doctrine in all its breadth and force is maintained by courts and

jurists of the highest ability and authority, which hold that whether the contract is executory or executed, the plaintiff may introduce parol evidence to show mistake or fraud whereby the written contract fails to express the actual agreement, and to prove the modifications necessary to be made, whether such variation consists in limiting the scope of the contract or in enlarging and extending it so as to embrace land or other subject matter which had been omitted through the fraud or mistake, and that he may then obtain a specific performance of the contract thus varied, and such relief may be granted although the agreement is one which by the statute of frauds is required to be in writing. This view, in my opinion, is not only supported by the overwhelming preponderance of judicial authority, but is in complete accordance with the fundamental principles of equity jurisprudence. * * * The same broad view of the doctrine is clearly illustrated in the treatment of executed contracts, or conveyances. It is settled by the great preponderance of authority that a deed of land may be thus corrected by enlarging its scope, extending its operation to other subject-matter, supplying portions of land which had been omitted, making the estate conveyed more comprehensive, as changing a life estate into a fee, and the like, and by enforcing the instrument thus varied against the grantor."

And as also said by the same authority, section 859 : "It is * * * settled that in suits, whenever permitted, to reform a written instrument on the ground of a mutual mistake, parol evidence is always admissible to establish the fact of the mistake and in what it consisted; and to show how the writing should be corrected in order to conform to the agreement which the parties actually made."

The same is true in cases of fraud. *Idem,* sec. 872 *et seq.*

And the same doctrine is applicable where the reforma-

tion in the deed is sought to be made by the allegations of the answer of a defendant. *Idem.* sec. 860, at p. 1519.

Hence, in the view I take of the case, it is essential for the decision of the questions covered by the two holdings of the majority opinion above referred to that we should decide what the evidence in the cause establishes was the contract of purchase with respect to its difference from the deed; and what caused the reservation aforesaid to be inserted in the deed.

Upon such a question of fact it is true, as is well settled, that "the evidence must be clear, convincing and satisfactory." *Charles* v. *Charles,* 127 Va. 604, 104 S. E. 823; Pomeroy's Eq. Jur., sec. 862. But the testimony of the defendant, George W. McClanahan, who, it is to be remembered, was examined by the appellant, Green Charles, as a witness in his behalf, clearly, convincingly and satisfactorily shows that the contract of purchase contained no reservation of any mineral interest in the land; and that it was not until subsequently to the payment and satisfaction in full by this defendant of the purchase money and other consideration for the land that, when the deed to be made by the vendors was mentioned, the vendors (through appellant) stated to the defendant vendee that they owned only a half interest in the mineral interest in the land, and for that reason alone would have to reserve such an interest by the provisions of the deed. Both of the vendors testify in the cause as witnesses for appellant, and it is, to my mind, a significant fact that neither of them deny, and the appellant practically admits, that they did represent to the said defendant at the time they made the deed to the latter, as the reason for the reservation aforesaid, that they owned only the half interest in the minerals which the deed by its provisions conveyed, and said defendant positively testified repeatedly in his deposition was their distinct representation on the subject; yet, both of such vendors testify in

effect that such representation was untrue; that they never thought that there was any defect in their title to the mineral interests except as to one-third of such interests. They testify in substance that they had a *bona fide* doubt at the time they made the deed to the said defendant as to whether they had any title to one-third of such mineral interest; but they did not so state the situation to such defendant. The appellant, Green Charles, testified on this subject as follows:

"Q. Wasn't the exception made because you did not think you owned the entire interest in the coal?

"A. It might have been something bearing on my mind that way, that we did not own the entire interest, I could not say.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"Q. Did you not state to George W. McClanahan that you did not own the one-half interest in the coal?

"A. I don't remember of ever saying much to him about it. I might have said something to him that we didn't own it, on account of some settlement that was made in the Pearson survey."

D. M. Charles testified on the same subject as follows: "We thought there was a third of the coal gone from us but we were going to except half of it."

Such being the facts, it seems to me to clearly appear that the untrue representation of the grantors to the grantee as to the title was in effect a fraudulent representation, since the grantors knew at the time they made it that it was not a correct representation, and it was intended to induce the vendee to act upon it as being strictly correct.

There is nothing in the testimony in chief of appellant or in the other evidence for appellant, in conflict with the testimony of said defendant with respect to what the contract of purchase was, except that there are certain state-

ments in the testimony of appellant on cross-examination which are to the effect that in the contract of purchase it was understood that a half interest in the minerals was not embraced in the sale. But this merely creates a conflict in the evidence for appellant, and, to my mind, these statements in the testimony of appellant bear internal evidence of their untrustworthiness; and, besides, they come from one guilty of the fraudulent representation aforesaid; so that they do not, as I think, in any degree lessen the convincing force and effect of the testimony of the said defendant.

On the whole, therefore, I think that the case established by the evidence is as follows: The contract of purchase was of the land, including all mineral interests (meaning coal and other mineral interests). When the deed came to be made, the aforesaid reservation provision was inserted in it, solely because of the mistake of the grantee aforesaid in thinking that the grantors did not own and hence could not convey more than a half of the mineral interest embraced in the contract of purchase, such mistake on the part of the grantee being induced by the fraudulent representation aforesaid on the part of the grantors.

This presents, to my mind, a typical case for reformation of the deed under the well settled doctrine on the subject. And the same would be true if the mistake aforesaid had been merely a mutual mistake of grantors and grantee.

McClanahan held the deed as he did for seventeen years before this suit was brought because he thought it was all the conveyance his grantors had it in their power to make him. He was led into this mistake by the false representation of his grantors aforesaid. From the bill in this suit McClanahan first discovered the existence of the mistake. He thereupon promptly answered the bill and asked for the reformation aforesaid of the deed.

I think, therefore, that the deed should be reformed in

accordance with the prayer of the answer of the said defendant. It follows that the deed aforesaid of such defendand wife to his son does not constitute any cloud upon any title of appellant and hence should be allowed to stand as it is.