## Staunton.

JOHN W. PUCKETT, AND OTHERS, v. RUBY CAMPBELL, AND OTHERS.

September 20, 1928.

The opinion states the case.

*W. B. Phipps* and *G. Mark French*, for the appellants.

No appearance for the appellee.

HOLT, J., delivered the opinion of the court.

On January 13, 1921, John W. Puckett and Martha, his wife, sold to Tiny Campbell a tract of about twenty-two acres of land in Dickenson county. The price paid was $500.00 cash in hand. On April 27, 1925, L. L. Campbell and Tiny, his wife, conveyed this property to R. S. Sutherland, trustee, in trust to secure a $400.00 note, due to J. W. and M. Puckett, and on May 1, 1925, Campbell and wife, by another trust deed, conveyed it to John M. Skeen, trustee, in trust to secure Alex. Mullen and son in the sum of $171.42. This suit was brought to reform the deed of January 13, 1921, that it might conform to the intention of those who were parties to it. So much of its language as touches the issue before us is:

"This deed made and entered into this the 13th day of January, 1921, by and between John W. Puckett and Martha Puckett, parties of the first part, and Tiny Campbell and her heirs of the second part.

"Witness: That for and in consideration of the sum of $500.00, five hundred dollars, cash in hand paid, the receipt of which is hereby acknowledged by the parties of the first part. The parties of the first part hereby grants, bargains, sells and conveys unto the party of the second part * * *.

"To have and to hold unto the party of the second part to her lifetime and then to her heirs forever, and the parties of the first part hereby warranty generally the title to the property hereby conveyed.

"Witness the following signatures and seals, this September 2, 1922.

"J. W. PUCKETT,   (Seal)<br>"MARTHA PUCKETT.(Seal)."

Tiny Campbell is dead and died a few days after this suit was brought, leaving to survive her minor children who have been made parties to it. The

language used gave to her an estate for life and to these minor children a remainder in fee. *Turner* v. *Monteiro*, 127 Va. 537, 103 S. E. 572, 13 A. L. R. 383; *Jenkins* v. *Hogg*, 139 Va. 682, 124 S. E. 392; Va. Code 1919, section 5152.

In this state of facts these lienholders have lost their security, and since Mrs. Campbell, at the time of the execution of the trust deed, was desperately ill with tuberculosis, they never had any which amounted to anything; but it is their claim that the deed does not express the true intention of the parties whose clear purposes was that it should carry to the grantee, Tiny Campbell, an estate in fee simple, and this we are now asked to decree.

In the beginning, we must ascertain if such a suit can be maintained by these lienholders in their capacity as such. It can if they hold as privies to the parties who executed it.

There are many definitions of privies. This is taken from *State, ex rel National Subway Co.* v. *St. Louis*, 145 Mo. 551, 46 S. W. 981, 42 L. R. A. 113: "Privies are those who have mutual or successive relationship to the same right of property or subject-matter, such as 'personal representatives, heirs, devisees, legatees, assignees, voluntary grantees, or judgment creditors or purchasers from them with notice of the facts.' "

There is direct authority for the proposition that a mortgagee is a privy and is entitled to reformation.

"A mortgagee stands in the shoes of a purchaser for value and is entitled to reformation, but not after the mortgage has been foreclosed." 34 Cyc. 952.

In *Sills* v. *Ford*, 171 N. C. 733, 88 S. E. 636, the court said: "The authorities are uniform in holding that the relief by reformation of a written instrument

will be granted to the original parties thereto, and to those claiming under or through them in privity. Eaton on Equity, page 621; 24 A. & E. Enc. (2d ed.), page 655, and note 87; and *Adams* v. *Baker*, 24 Nev. 162, 51 Pac. 252, 77 Am. St. Rep. 799." *Butler* v. *Millner*, 95 Kan. 463, 148 Pac. 605.

Section 681, Pomeroy's Eq. Remedies, Vol. 2, states the law to be: "Reformation may be had against a party to and instrument, and against anyone taking from him without consideration or with notice. Accordingly, a purchaser or mortgagee who takes with notice is in the same position as the original party, so far as this remedy is concerned. A *bona fide* purchaser for value, and without notice, however, is not subject to the equity of the party injured by the mistake, and there can be no reformation against him. In most jurisdictions, the equity for a reformation is superior to the liens of subsequent attaching and judgment creditors of the defendant."

▉ These trustees and lienholders claim directly under the grantee in the deed of January 13, 1921, and under their deeds of general warranty. They are privies and have the same right to demand reformation that Mrs. Campbell herself had.

▉ In *Charles* v. *Charles*, 127 Va. 604, 104 S. E. 823, this court said: "There is no doubt about the jurisdiction of a court of equity to reform an instrument so as to make it speak the real agreement of the parties where, because of mutual mistake, it fails to do so, but the evidence of such mistake must be clear, convincing and satisfactory."

Many Virginia cases are cited to sustain this well established rule.

*Chaffin* v. *Hull* (C. C.), 39 Fed. 887, is an interesting case. In 1840 Meyers and wife conveyed property to

Russell, trustee, in trust for Mrs. Curtis. The deed as drawn and executed vested a life estate in Mrs. Curtis, and the remainder in her heirs. It was so drawn through a mistake of the draftsman, the intention of all the parties being that a fee should vest in Mrs. Curtis and not a life estate. Afterwards a suit was brought and there a decree was entered reforming it so as to express its true intention as ascertained by the court. To this suit the heirs were not made parties, and many years afterwards they brought another suit setting up their interest. This last suit, the *Chaffin and Hull Case,* was remanded to be heard upon its merits, but it is manifest from Judge Brewer's opinion that he, "after a pleasant discussion with my brother Thayer," entertained no doubt whatever about the power of the court to reform the deed if the evidence sufficed.

A part of the original deed was read to the parties before its execution, and it is possible that all of it was. As to this the evidence is not satisfactorily clear. It is clear, however, that as written it did not express their purpose theretofore had.

In such a case, Mr. Pomeroy, at section 677, makes this statement as to the law: "If, * * * after making an agreement, in the process of reducing it to a written form the instrument, by means of a mistake of law, fails to express the contract which the parties actually entered into, equity (may grant reformation), to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact. In this instance there is no mistake as to the legal import of the contract actually made; but the mistake of law prevents the real contract from being embodied in the written instrument. In short, if a written instrument fails to express the

intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing."

See also Pom. Eq. Jur., section 845, and cases cited.

The evidence is clear as to what the intention was, and indeed there is no conflict. Mrs. Campbell thought that she had title in fee and did not know that there was any question about it until shortly before her death, when she attempted to sell to one Girdy Ratliff. The testimony of her grantor, J. W. Puckett, and her own letters show this. It is true that the scrivener has not testified, but he has left the country.

Not only is the evidence clear and undisputed, but the circumstances sustain this conclusion. J. W. Puckett had sold this property for $500.00, and it is not easy to believe that he would afterwards have been willing to lend her $400.00 on it at a time when she was in desperate health had he known that she had only a life estate, and it is also not probable that Mrs. Campbell would have executed a trust deed therefor, with general warranty of title, had she known that her interest was limited and not absolute.

We are of opinion that this suit can be maintained, and that the deed should be reformed so as to vest in the grantee, Tiny Campbell, or, since she is now dead, in her minor children, an estate in fee simple. These children are now before the court and take by inheritance, subject to the two trust deeds set up in the bill.

It follows that the decree appealed from must be reversed, and it is so ordered.

*Reversed and remanded.*