# Wytheville.

DONALDSON & WIFE v. LEVINE AND OTHERS.

July 30, 1896.

Absent, Harrison, J.

1. Chancery Jurisdiction—*Reformation—Mutual Mistake—Presumption—Burden of Proof.*—While courts of equity have jurisdiction to reform written instruments on the ground of mutual mistake, yet the presumption is that the writing speaks the final agreement of the parties, and the burden is on the complainant to overcome this presumption, and to do so the mistake must be plain, and established by the clearest and most satisfactory proof. In the case in judgment this has not been done.

Appeal from a decree of the Corporation Court of the city of Roanoke, pronounced March 21, 1893, in a suit in chancery wherein the appellants were the complainants, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*Scott & Staples,* for the appellants.

*L. H. Cocke* and *Moomaw & Woods,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

On May 9, 1890, the appellant, Jane Donaldson, bought through Chipman, Massie & Co., real estate agents, of Mrs. L. Levine, one of the appellees, a lot of land, with improvements thereon, situated in the city of Roanoke, for $6,000.

The memorandum of agreement entered into at the time, and signed by the agents is as follows:

"Roanoke, Va., May 9, 1890.

"This contract, made and entered into this day between Chipman, Massie & Co., agents of L. Levine, of the one part, and J. Donaldson, of the other part, witnesseth: That in consideration of the sum of six thousand (6,000) dollars, the parties of the first part have sold to the party of the second part that certain lot, with a house thereon, at the southwest corner of Henry and Kirk streets:

"Terms: Twelve hundred ($1,200) dollars cash, and the balance, assume the indebtedness on the same, and the balance in one and two years, with interest at the rate of six (6) per cent. per annum.

"Chipman, Massie & Co."

By deed of same date, Mrs. Levine and her husband conveyed the property to Jane Donaldson. This deed provided "that in consideration of the sum of $6,000, to be paid as follows, to-wit: $1,200 cash in hand paid, receipt whereof is hereby acknowledged, and the assumption by the party of the second part of five certain negotiable notes of $750 each, and one note for $150.00, and four notes for $135.00 each, all the said notes bearing date January 17, 1890, payable in one, two, three, four, and five years, without interest. Said notes being made and signed by Leipschen Levine, and payable to Estella G. Engleby, and the balance of the deferred payments to be paid in two equal annual payments of $487.71 each, as evidenced by two certain negotiable notes made and signed by Jane Donaldson and payable to Leipschen Levine, or order, at the First National Bank of Roanoke, the said parties of the first part do grant," &c.

By deed of same date, Jane Donaldson and her husband conveyed the property described in the first named deed to

Henry S. Trout, Jr., in trust to secure the two notes of $487.71 each, before mentioned and described.

It seems that after the two notes of $487.71 were executed by Jane Donaldson and delivered to Mrs. Levine, they were negotiated before maturity, by the latter, to J. M. Watts, who becomes a party defendant to this suit on his own petition. At the maturity of the first note for $487.71 Jane Donaldson claimed that a mistake had been made in the settlement for the purchase of the lot conveyed to her, and that she did not owe the whole of said note, but only $180 thereof, and interest thereon, and, in order to avoid a sale of the property under the deed of trust to Trout, Mrs. Levine and Mrs. Donaldson agreed between themselves that Mrs. Donaldson should pay $192.92 of the note, and Mrs. Levine $329.25, the balance, but the arrangement not to be conclusive on either party as to their liability upon the note, or as to the true amount of the consideration for the lot of land. When the last $487.71-note became due, it was not paid, and Watts, the holder thereof, directed the trustee, Trout, to sell the property under the trust deed, and the trustee was proceeding to do so when Mrs. Donaldson obtained an injunction from the judge of the Corporation Court of Buena Vista, restraining the trustee from selling the property until the further order of the Corporation Court of Roanoke city.

The ground upon which the injunction was obtained, and the relief prayed for in the bill, was that there was a mutual mistake made by the parties in the deed of conveyance from Mrs. Levine and her husband to Mrs. Donaldson, of May 9, 1890; the alleged mistake being that after deducting the cash payment of $1,200, the five notes of $750 each, the note of $150, and the four notes of $135 each, the true balance due from Mrs. Donaldson was $360 instead of $975.42, and when divided into two notes they would have been $180 each, instead of $487.71. In other words, the contention of Mrs. Donaldson is that she was only required to assume the

payment of the five notes of $750 each, held by Engleby, and secured on the property, the note of $150, and the four notes of $135 each, and then deducting the cash payment of $1,200 and the several notes mentioned, aggregating $4,440, from the $6,000, she would have been due only $360, which was to be divided into two notes of $180 each, payable at one and two years, with interest.

The defendants, Mrs. Levine and her husband, filed their joint answer and amended answer, to which plaintiffs replied generally, and the cause was heard before the judge of the Corporation Court of Roanoke, March 21, 1893, upon the bill and exhibits therewith, the answer and amended answer of Mrs. Levine, the exhibits therewith, and plaintiff's general replication thereto, and the petition of James M. Watts. Whereupon the court dissolved the injunction awarded in the case, and decreed that Mrs. Levine recover of Jane Donaldson the sum $329.75, with interest from July 20, 1891, being the part of the first $487.71-note that was paid by Mrs. Levine, and which should have been paid by Mrs. Donaldson in whole. From this decree an appeal was obtained to this court.

It was said by Lewis, P., in *Shen. Valley R. Co.* v. *Dunlop and Wife,* 86 Va. 361: "The authorities all agree that equity has jurisdiction to reform written instruments in two well-defined classes of cases only, viz.: (1) Where there has been an innocent omission or insertion of a material stipulation, contrary to the intention of both parties, and under a mutual mistake; and (2) where there has been a mistake of one party accompanied by fraud or other inequitable conduct of the remaining parties. But so great and obvious is the danger of permitting the solemn engagements of parties, when reduced to writing, to be varied by parol evidence, that in no case will relief be granted except where there is *a plain mistake, clearly made out by satisfactory and unquestionable proof.* According to some of the cases, there must be a

certainty of the error. At all events, the party alleging the mistake, must show by evidence, which leaves no reasonable doubt upon the mind of the court, not only exactly in what the mistake, if any, consists, but the correction that should be made. \* \* \* A rule less rigid would be fraught with infinite mischief, since it would be destructive to the certainty and safety of written contracts."

In the case of *Carter, Trustee,* v. *McArton,* 28 Gratt. 360, Staples, J., said: " Although a deed or other instrument may be reformed, when through mistake or accident it does not accurately represent the agreement of the parties it is necessary that both the agreement and the mistake shall be made out by the clearest and most satisfactory testimony. Where the mistake is established by other preliminary written agreements, equity more readily interferes than in cases where the mistake is to be established by parol evidence. But even where there is a preliminary article of agreement or settlement, it must be made plainly to appear that the parties intended in the final instrument merely to carry into effect the contract or arrangement set forth in the prior agreement. The very circumstance that the final instrument of conveyance differs from the preliminary contract, affords of itself some presumption of an intentional change of purpose or agreement, unless there is some recital in it, or some other attending circumstance, which demonstrates that it was merely in pursuance of the original contract." See also Story's Eq. Jr., sec. 160; *Leas' Ex'or* v. *Eidson,* 9 Gratt. 277; *Mauzy* v. *Sellers,* 26 Gratt. 641; *Perkins* v. *Lane,* 82 Va. 63; *Morgan* v. *Fisher's Adm'r,* 82 Va. 423; *Major* v. *Ficklin,* 85 Va. 738; *Fudge* v. *Payne,* 86 Va. 303; *Hearne* v. *Marine Ins. Co.,* 20 Wall. 488; *Lyman* v. *United Ins. Co.,* 2 Johns. Ch. 630.

The burden of proof is throughout on the complainant, who must rebut the presumption that the writing speaks the final agreement by the clearest and most satisfactory evidence. It must not only appear that the parties entertained

a different intention in the first instance, but that it was not changed at or before the execution of the instrument; for otherwise the legal and natural inference is, it was laid aside for that expressed in the writing. 2 White and T. Leading Cases in Equity, Pt. 1 p. 980 (Ed. 1877); Pomeroy's Eq. Jur., sec. 859.

In the case here, the answer of Mrs. Levine denies the allegation of the bill that there was a mutual mistake in the deed conveying the property to Mrs. Donaldson, and instead of the clear and satisfactory proof of the alleged mistake that is required, there is absolutely no proof whatever. It is contended, however, that the mistake appears on the face of the contract and the deed, though it is conceded that, as a general proposition, a deed operates as a merger of the contract in execution of which the deed was made. If we look then to the deed, we are wholly unable to perceive the mistake complained of. The consideration of the deed is $6,000, and to assume that Mrs. Denaldson was only to pay the five notes of $750, secured on the property, payable at one, two, three, four, and five years, and which doubtless represented the principal sums which constituted the encumbrances on the property, and was not to pay the other five notes, one of $150, and four of $135 each, which doubtless represented the accruing interest on the principal sums, or that, if she was to pay these interest notes, they also were to be deducted from the purchase price of the property, $6,000, although she took possession of the property and received the benefits therefrom from the date of the purchase, would, it would seem, be a violent assumption. Certainly the fact appearing in the deed that the interest notes were not deducted from the $6,000 is by no means sufficient to warrant the conclusion that it was a mistake. There is a slight variance between the amount of these notes that are supposed to be interest notes, and the amount of the interest that would have accrued on the principal notes of $750 each,

but it is inconsiderable. It is by no means unreasonable that the purchaser, Mrs. Donaldson, should have agreed, as the deed provided, to pay the interest on her purchase money to accrue after she came in possession of her property, and this is no more than she assumed to do by the acceptance of the deed of conveyance; and to hold that she did not so agree would be to hold that she had five years within which to pay the aggregate of the five notes of $750 each, without interest thereon, and leave the corresponding interest notes, secured also on the property, to be paid by Mrs. Levine from whom she purchased; for, if the notes spoken of here as interest notes had been deducted from the consideration of the deed, it would have been in effect to make Mrs. Levine, the vendor, pay the interest on the principal notes of $750 each, accruing at one, two, three, four and five years from their date, while the vendee, Mrs. Donaldson, was in possession of the property, and in the full enjoyment of it.

We are of opinion that there is no error in the decree appealed from, and it is therefore affirmed.

*Affirmed.*