## Richmond.

BIBB AND OTHERS v. AMERICAN COAL AND IRON CO. AND OTHERS.

109  261
f110  825

March 11, 1909.

Absent, Keith, P., and Cardwell, J.

1. REFORMATION OF INSTRUMENTS—*Mutual Mistake—Proof Required.*—
The burden of proof is on the complainant, and a very high degree of proof is required, in a suit to reform a written contract. A mere preponderance of the evidence is not sufficient, but the existence of the mutual mistake must be conclusively established.

2. EQUITY—*Supplemental Bills—Office of.*—One of the chief offices of a supplemental bill is to bring into the case new events referring to and supporting, or affecting, rights and interests already mentioned, which have arisen subsequently to the filing of the original bill.

3. VENDOR AND PURCHASER—*Damages—Defective Title to Gas Well—Lease—Well Ceasing to Flow Pending Suit for Purchase Price—Supplemental Bill.*—In a suit to enforce the collection of the balance of purchase money for real property, a part of which consisted of a gas well, where it appears that the property was sold in fee, free from encumbrances, at a gross price, and that the complainant did not have title to the gas well, and in consequence thereof the defendant was compelled to lease the gas well, the fact that the well ceased to flow and was abandoned pending the suit may be set up by a supplemental bill, and the complainant is entitled to recover the balance of purchase money less such reasonable sums as were paid for the use of the gas well while it flowed. In the absence of fraud, where the outstanding title is acquired, or an incumbrance is removed, by purchase by a vendee in possession, such vendee is entitled to the amount reasonably and fairly paid by him on that account, and to no more.

Appeal from a decree of the Chancery Court of the city of Richmond. Decree for defendants. Complainants appeal.

*Reversed*

The opinion states the case.

*Scott, Buchanan & Cardwell,* for the appellants.

*H. R. Pollard, H. A. McCarthy* and *Meredith & Cocke,* for the appellees.

Whittle, J., delivered the opinion of the court.

The original bill in this case was filed by the appellants against the appellees in September, 1902, to enforce the payment of $5,000, the residue of the purchase price of $35,000, for the sale of their lease-hold interest in a tract of coal land located in Mingo county, West Virginia, together with the improvements, fixtures and certain personal property, consisting of a stock of goods, live stock and unexpired insurance policies, and also "the natural gas well" on the premises, under a contract of December 10, 1901. The contract stipulates that the foregoing property is to be conveyed by deed free from incumbrances.

The bill contests the title of the Mingo Coal Company to the gas well, or, at least, the right of that company to exact compensation for its use, either from the plaintiffs or their assignee, the American Coal and Iron Company. The plaintiffs also assert title in themselves to the property, at least to the extent of their right to use it in connection with their leasehold free of rent. It is, moreover, alleged that it was the intention of the plaintiffs, by the contract of sale, to sell, and of the American Coal and Iron Company to buy, only such interest in the gas well as they acquired from their grantors, Morrison and

Walker, and that the insertion of the provision in respect to that property in the fee simple clause of the contract of sale was the result of a mutual mistake; and the prayer of the bill is that the contract be reformed so as to conform to the true understanding of the parties. The answers of the defendants controvert both contentions.

The American Coal and Iron Company, in its answer, says that, shortly after the contract of purchase had been executed, it first learned of the claim of the Mingo Coal Company to the gas well; and that, in order to avoid complications and to continue its mining operations, it was compelled to enter into an agreement with the Mingo Coal Company, by which it was allowed to use the gas from the well upon the payment of an annual charge of $250; that it had paid all the purchase money due under the contract of December 10, 1901, except $5,000, which sum it notified the plaintiffs it would hold to indemnify and save itself and its assignee harmless on account of the failure of the plaintiffs to comply with their contract in the matter of conveying the gas well; "that it had repeatedly stated to the plaintiffs that it was ready to pay the residue of the purchase money if they would convey the gas well free of incumbrance, and relieve it and the assignee of the annual charge aforesaid."

The correspondence between the defendant and the plaintiffs in relation to the agreement for the use of the gas well shows that the annual stipend of $250 covered the entire output of the well and the use of the gas for all purposes whatsoever. In a letter, under date of February 8, 1902, the president of the American Coal and Iron Company writes: "We are not raising a frivolous question. It is one of great importance to us. It involves our right to use the gas well free of charge and as our own, and the right of the Mingo Coal Company to demand a compensation of us for the use of the well during the life of our lease." A few days later he says: "In a word, the lease to us

from the Mingo Coal Company gives us no greater right than we would have enjoyed if your sale of the well to us had carried with it a good title."

The vendee was never deprived of the possession or use of the well, and all the gas was consumed by it in the use and ceased to flow, and the well was abandoned as valueless August 21, 1904.

Before the hearing, the plaintiffs asked leave to file a supplemental bill, which alleged that the vendee took possession of all the property included in the contract of sale, and in connection with its mining operations used the gas from the well until it ceased to flow and the well was abandoned August 21, 1904. But leave to file the supplemental bill was denied, the court being of opinion that even if its allegations were proved the plaintiffs would not be entitled to the abatement of damages prayed for. The court also decreed that the American Coal and Iron Company was entitled to retain the $5,000, the balance of the purchase price of the property sold under the contract of December 10, 1901, as compensation for the failure of the plaintiffs to convey to it a good title to the gas well free from all incumbrances, and dismissed the plaintiffs' bill with costs. From that decree this appeal was allowed.

We find no error in the ruling of the chancery court upon the primary contentions of the plaintiffs, in regard to their title to the gas well, and the alleged mutual mistake in the contract of sale. The burden of proof rested on the plaintiffs in both instances, and, without reviewing the testimony on those issues, we are of opinion that on neither point has it been satisfactorily borne.

The law is well settled, that a very high degree of proof is required in a suit to reform a written contract. The mere preponderance of evidence is not sufficient, but the existence of the mutual mistake must be conclusively established.

In Pomeroy on Specific Performance (ed. 1897), sec. 261,

the rule is thus stated: "The defect in the contract must, how-
ever, be proved beyond all reasonable doubt, by evidence of the
clearest and most satisfactory nature.    The burden of proof is
on the plaintiff.    *    *    *    An alteration of the writing can-
not be made upon a conjecture as to the true reading, even
though the court is satisfied that the existing instrument does
not express the real intention of the parties."

The decisions of this court are in full accord with that state-
ment of the law as to the character of evidence necessary to re-
form a written contract.    *Mauzy* v. *Sellars,* 26 Gratt. 641, 647;
*Carter* v. *McArter,* 28 Gratt. 356, 360; *Fudge* v. *Payne,* 86
Va. 303, 10 S. E. 7; *S. V. R. Co.* v. *Dunlop,* 86 Va. 346, 351,
10 S. E. 239; *Donaldson* v. *Levine,* 93 Va. 472, 25 S. E. 541;
*Moore* v. *Assurance Co.,* 103 Va. 391, 394, 49 S. E. 499;
*Beach* v. *Bellwood,* 104 Va. 170, 183, 51 S. E. 184.

Putting aside, therefore, both of these contentions as not
proved, we shall address ourselves to the ruling of the trial court
on the question of the measure of damages to which the vendee
is entitled on account of the defective title of the plaintiffs to
the gas well.

In approaching the consideration of that question, we may
premise that the record does not show either fraud or misre-
presentation on the part of the plaintiffs with respect to their
title to the gas well.    The acquiescence of the Mingo Coal Com-
pany in the use of the well as an incident to the leasehold of the
coal property in the past may well have induced belief on the
part of the plaintiffs that it would make no charge for the con-
tinued use of it by their vendee.

As a question of correct practice, under the evidence in the
case, we have no doubt about the propriety of bringing into the
record the fact of the exhaustion and abandonment of the gas
well by the vendee pending litigation, as affecting the measure
of its damages.    Even in an action at law on a life insurance
policy which had been repudiated by the insurance company,

where the insured died before trial, the beneficiary was permitted to prove the cessation of the life of the insured as an element proper to be considered in fixing the *quantum* of damages. Opinion by Burks, Jr., in *Clemmitt and wife* v. *New York L. Ins. Co.,* 76 Va. 355, 362.

One of the chief offices of a supplemental bill is to bring into the case new events referring to, and supporting, or affecting rights and interests already mentioned, which have arisen subsequently to the filing of the original bill. Story's Eq. Pl., sec. 336; 1 Bar. Chy. Pr. 165, 351; *Pleasant* v. *Logan,* 4 H. & M. 489; *Boykins* v. *Smith,* 3 Munf. 102; *Laidly* v. *Merifield,* 7 Leigh, 346; *Glenn* v. *Brown,* 99 Va. 322, 38 S. E. 189.

Though it is undoubtedly true, as a general proposition, that the test of the value of property sold is to be applied as of the day of sale, the case in judgment does not come within the influence of that principle. In other words, we are not called on here to speculate as to the value of the gas well (the price of which was not fixed by the parties in the contract of sale, and as to which there is no evidence in the record), as an original proposition; but our inquiry is limited to the ascertainment of the *quantum* of damages sustained by the vendee by reason of the failure of the vendors to convey a good title to the property in controversy.

The well established rule on that subject is that, in the absence of fraud, where the outstanding title is acquired or the incumbrance removed by the vendee in possession by purchase, such vendee is entitled to the amount reasonably and fairly paid by him on that account, and to no more. That principle is distinctly enunciated by the Supreme Court of the United States in the case of *Bush* v. *Marshall,* 6 How. 284, 12 L. Ed. 440. Mr. Justice Grier, in delivering the opinion of the court, quotes with approval the statement of the law from the case of *Galloway* v. *Findlay,* 12 Pet. 295, 9 L. Ed. 1079, as follows: "Equity treats the purchaser as a trustee for his vendor, because

he holds under him; and acts done to perfect the title of the former, when in possession of the land, inure to the benefit of him under whom the possession was obtained, and through whom a knowledge of a defect of title was obtained. The vendor and vendee stand in the relation of landlord and tenant; the vendee cannot disavow the vendor's title."

These principles are universally recognized, and firmly established in Virginia. *Hill* v. *Cunningham,* 1 Munf. 332, 338; *Bryan* v. *Salyards,* 3 Gratt. 181; *Roller* v. *Effinger,* 88 Va. 645, 14 S. E. 337; *Burnett* v. *Cardwell,* 76 U. S. 290, 19 L. Ed. 712; *Peters* v. *Bowman,* 97 U. S. 56, 25 L. Ed. 91; Rawle on Cov. for Title (5th ed.), sec. 192; Wood's Mayne on Dam., sec. 250.

Nor is the application of the rule to this case affected by the circumstance that the American Coal and Iron Company only acquired the use of the gas well. It was dealing in regard to a species of property of uncertain duration, and prudently adopted a form of contract which rendered the benefits and burdens reciprocal and co-existent, the plan being to set apart a sum of money, the interest on which, at 5%, would yield a sum equal to the annual exaction for the use of the well as long as the gas might continue to flow. That mode of adjustment was chosen by the vendee without consulting the plaintiffs, and the wisdom of it has been demonstrated by subsequent events. The fact that it was satisfactory to the vendee and considered the equivalent of a conveyance by the plaintiffs of the gas well, clearly appears not only from the conduct of the parties, but also from the answer and the extract from the letter of the president already quoted.

Subordinating, then, form to substance, our conclusion on this branch of the case is that the American Coal and Iron Company (after having been placed in possession of the gas well by its vendors under the contract of sale) acquired the outstanding title of the Mingo Coal Company to the gas well, and

is affected with an equity in favor of its vendors which forbids that it shall demand of them more than its actual outlay in the purchase of such title.

It follows from these views that the decree of the chancery court must be reversed; and this court will enter such decree as that court ought to have entered, awarding to the appellants the balance of their purchase money, with interest, subject to a credit for the amount paid by the American Coal and Iron Company to the Mingo Coal Company for the use of the gas well.

*Reversed.*