# Richmond.

## H. C. KIDD v. J. L. Q. MOORE.

January 17, 1929.

Absent, Chichester, J.

The opinion states the case.

*Warren & Widener*, for the plaintiff in error.

*Morton & Parker, S. H. Bond, S. W. Coleman* and *W. S. Cox*, for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

This is a continuation of the controversy between

J. L. Q. Moore and H. C. Kidd, opposing candidates at the November, 1927, election for the office of treasurer of Scott county, one feature of which was considered and determined in the case of *Moore and Others* v. *Pullem*, 150 Va. 174, 142 S. E. 415. That case was a petition for mandamus to require the judges of election at Fraley precinct, in Scott county, to count and certify certain votes which were offered under what is generally called the "absent voters' law" (Michie's Code, 1924, sections 203-218, inclusive, section 205 of which was amended by the Acts of 1926, page 463). Since then there have been other amendments (Acts 1928, page 1016). A reference to the opinion in that case is necessary in order to understand this.

Among other things, we there held that the judges of election at Fraley precinct had failed to discharge a mandatory duty in refusing to count such of these ballots (if any) as had been legally deposited by qualified voters under the absent voters' law. In undertaking to clarify this view we said this:

"This imperative duty, so clearly imposed upon the judges of election, they failed to perform. They were not, of course, necessarily bound to deposit every one of those ballots in the regular ballot box and thereafter to count and certify them, because they were also required first to ascertain whether each of the persons whose ballots were so offered had been properly registered, and then whether they had qualified themselves to vote at that election by payment of State poll taxes for the three preceding years, and also to consider every other fact which might have then appeared to show that the person was not a qualified voter. For instance, if it then appeared that he had been convicted of crime, or if in the interval he had died, of course the

ballot could not have been legally deposited or counted as a valid vote. Subject, however, to their duty to determine whether or not the person so offering to vote was then entitled to do so (and this responsibility rested upon them also as to each of the other persons offering to vote in person), the judges of election had no discretion except to deposit the ballots, as directed by the statute, and thereafter to count them together with and just as all the other legal ballots were required to be counted, and the result of such count certified to the commissioners of election.

"The contention here is that because the ballots were not counted and certified on the night of the election, therefore they could never be thereafter counted by the judges of election. We are of opinion that this is an erroneous view. To sustain it would not only deny the right of legal voters to participate in the election, but, if the counting of such ballots would have changed the result, the failure to do so imposes an improper burden upon these candidates for office, who, if they had been counted, would have shown that they were legally elected.

"In this case the commissioners of election being unable to require the judges of election at Fraley precinct to count these votes, and having been themselves, by mandamus, forced to tabulate and certify the result of the election with these votes uncounted, the consequence is that certificates have been since awarded to those candidates who were not legally elected (if these uncounted ballots would have changed the results), and thus the burden of contesting the election has been unjustly and illegally placed. Our view is that, at the time the order here complained of was entered, and before the tabulated results of the

election had been certified by the commissioners of election, these petitioners had the right to require the judges of election at Fraley precinct to discharge their neglected duty, *i. e.*, to count and certify such of these votes as were cast under the absent voters' law by electors who were duly qualified to vote at that election."

■ We concluded that the circuit court erred in refusing to award the peremptory mandamus, but it having been suggested and conceded that there was a contested election proceeding pending, which of necessity involved the legality of the votes so offered, we concluded not to award the mandamus, because the trial court in that contested election case had jurisdiction over these ballots, could have them opened and could require such of them as were cast by legal voters to be counted and given legal effect. It was because of the pendency of this contested election case and the plenary jurisdiction of the court in that case to determine the question involved that we declined to award the mandamus. Out of abundant caution, merely, we remanded the *Mandamus Case* to the trial court with directions to award the mandamus only if in the future conduct of the contested election case it should become necessary in order to maintain the substantial rights of the parties. We also indicated that in the contested election case the trial court had plenary power to have such of said ballots counted as were legally tendered, so as to ascertain, declare and enforce the results of the election.

Of course, if this court had been of opinion that the mandamus should certainly issue, or that its issuance was necessary for the maintenance of any substantial right of the petitioner, this court would have awarded it, and this is so manifest from the opinion in the case

that he who runs may read. Notwithstanding these clear expressions, the trial court, disregarding them, without requiring the parties either to proceed with or dismiss the contested election case, without making the slightest effort to ascertain whether these votes offered under the absent voters' law had been legally tendered by voters entitled then and there to vote, has awarded a mandamus to require Kidd, who had theretofore received the certificate of election, to surrender the office to Moore, the petitioner.

The proceedings subsequent to the decision of *Moore* v. *Pullem, supra,* which was decided here March 22, 1928, were these: On April 21, 1928, the Circuit Court of Scott county issued a writ of mandamus therein, requiring the judges and clerks of election at Fraley precinct to meet on April 26th in the presence of two representatives from each political party, should such representatives desire to be present, and to count the votes in the manner provided by section 214 of the Code of Virginia, among other things saying, that if found entitled to cast his vote the envelope should be opened and the ballot deposited in the regular ballot box, and the name of the voter entered upon the poll book by the clerk, and then directing them to count and certify such votes, just as if there had been no election contest pending.

These election officials, apparently disregarding that order, proceeded to count all of the votes so cast at Fraley precinct, sixty-three in number, and declined to consider any challenges thereof for any cause whatsoever. It appears from the allegations of the respondent, Kidd, that the absent voters' law had been violated there in many material particulars. All of these votes were challenged upon these grounds, and some of them were challenged upon the ground that it appeared

that certain of the persons offering to vote were not then legal voters. On the 27th day of April, 1927, the court entered another order in that case of *Moore and Others* v. *Pullem, supra,* reciting that the commissioners of election had again convened and canvassed these additional returns, counting all of the votes so tendered at Fraley precinct under the absent voters' law, and being thus counted, changed the result and upon the face of the returns they showed that Moore instead of Kidd had been elected. The court thereupon directed the county clerk to issue a certificate of election to Moore. This order, which it will be observed is in the original mandamus case of *Moore* v. *Pullem,* concludes: "This order is entered aside from and outside of the contested election cases pending in this court."

Pursuant to that order the clerk, as required by that order, issued a certificate of election to Moore, notwithstanding the fact that months previously the returns had been canvassed and a certificate of election had already been issued to Kidd, who had qualified, and was apparently discharging the duties of the office, and this although the contested election case was pending in the Circuit Court of Scott county.

Armed with this certificate of election, Moore demanded that Kidd surrender the office, and upon Kidd's refusal filed this petition for mandamus, which is now before this court. Thereafter, on May 7, 1928, the circuit court awarded a peremptory writ of mandamus, requiring H. C. Kidd to vacate and turn over to J. L. Q. Moore, the county treasurer's office of Scott county, and all books, papers, records, tax tickets, money and things belonging to the treasurer's office, and directing Moore to take the oath of office and to execute the bond required by law before entering

upon his official duties. It is from this order that this writ of error was allowed.

It seems to us only necessary to state these facts to demonstrate that every order which has been entered by the court in the case of *Pullem* v. *Moore*, since the former decision therein, is improper, and that the order awarding the peremptory mandamus in this case is clearly erroneous.

It seems to us certain that the order directing the issuance of the mandamus which this court had refused to issue in the *Pullem* v. *Moore Case*, outside of and independent of any evidence showing the propriety or necessity for doing so, either in that proceeding or in the contested election case, was a manifest misinterpretation of the order of this court. Every question properly arising as to the title to the office was before the court in the pending contested election case. The most direct method of determining the fact as to the sixty-three votes in question would have been to have required the ballots offered under the absent voters' law at Fraley precinct to be brought into court and the legality of each ballot then and there determined by the court. If any of them had been tendered by voters who were not qualified, they should, of course, have been rejected. If there were failures to comply with the provisions of the absent voters' law which were so serious in character as to render all of these votes invalid, of course none of them should have been counted. If the court desired to use the judges of election in its aid in making such a count, in the contested election case, this could have been done, but otherwise all that the judges of election could properly do, or have been directed to do, would have been to certify all the facts to the court for deter-

mination in the contested election case, together with all of the other issues properly raised therein. When the judges of election, apparently in violation of the order of the circuit court, counted all of these ballots without reference to whether or not the voters were entitled to cast them, they also violated the plain mandate of the controlling statute. When the election commissioners, whose duties had been fully discharged and who had already awarded the certificate of election to Kidd, again met and tabulated the votes, and certified that Moore was elected, they acted without legal authority and violated the statute; and the direction of the Circuit Court of Scott county in the *Moore* v. *Pullem Case* to issue another certificate of election to Moore was outside of the pleadings involved in that case, ignored the superior jurisdiction of the court in the contested election case, and that certificate is therefore null and void.

When the petition for mandamus here involved was filed by Moore against Kidd, his claim thereto being based upon that invalid certificate of election, the court should have sustained the demurrer to the petition, because the *prima facie* right to the office is in Kidd, being based upon the certificate of election which had been previously issued under the authority of the commissioners of election. The Circuit Court of Scott county having acquired jurisdiction in the contested election case, the jurisdiction under the facts here shown was exclusive, and it should have proceeded in that case to determine the title to the office and all of the questions involved in this controversy.

Mandamus should never issue unless the petitioner's right to it is clear. Under the conceded facts in this case, the ultimate right to the office of treasurer

of Scott county can only be determined after the issues raised in the contested election case are decided. Unless and until they are decided adversely to Kidd, he cannot be lawfully disturbed in the office.

The trial court should have sustained the demurrer to the petition for mandamus in this case and dismissed the petition. This the court will do here.

*Reversed.*