# Richmond.

## T. M. AND J. F. PURYEAR, EXECUTORS OF PEYTON PURYEAR, DECEASED, v. THE HOME INSURANCE COMPANY OF NEW YORK, ET ALS.

January 17, 1929.

The opinion states the case.

*John Martin* and *Allan Epes*, for the appellant.

*Sands, Williams & Lightfoot,* for the appellee.

HOLT, J., delivered the opinion of the court.

This suit is brought to reform a fire insurance policy, which, as written, is now of doubtful value, and to enforce it for the benefit of the estate of Peyton Puryear, deceased.

On April 15, 1921, A. C. Puryear was the owner of the real estate in the bill described, and placed through a local agent, W. H. Sheffield, with the defendant, on the dwelling there, insurance in amount $3,000.00. About December 1, 1922, he sold and conveyed this property to Mrs. Susie Pool. On account of the purchase there was a balance due of $3,926.48. This balance was evidenced by purchase money note, payable, not to the vendor, A. C. Puryear, but to his father, Peyton Puryear. A. C. Puryear was at that time indebted to his father, and it was for this reason that the transaction took this form. To secure this balance due, Mrs. Susie Pool, on December 1, 1922, executed a trust deed, whereby she conveyed her purchase to J. W. Hill, trustee, in trust for that purpose. Peyton Puryear died on March 15, 1924, and T. M. Puryear and J. F. Puryear qualified as his executors. On April 7, 1924, a few days before the policy of April 15, 1921, would expire, W. H. Sheffield, the insurance

agent, wrote to Peyton Puryear, asking him if he wished to renew it, and in reply to that inquiry received this letter:

"Virgilina, Va., April 12-24.

"Mr. W. H. Sheffield,

"Burkeville, Va.

"Dear Sir:

"In reply to your letter of the 7th will say that I want the insurance continued on this property. My father sold this property to Mrs. Jim Pool and we are holding deed of trust on the deferred payments so I want the insurance continued until payment is paid on the place. As my father died March 15th I want the policy drawn up in favor of Peyton Puryear estate, as T. M. and J. F. Puryear, executors; have the policy made for one year, also write me what the building is insured for and what the premium is and I will send you check at once.

"Yours truly,

"Thos. M. Puryear."

In compliance with this request the policy in litigation was written. This policy bears date April 15, 1924, and on its face "does insure Peyton Puryear eatate for the term of one year, from the 15th day of April, 1924." It will be observed that this is in exact accordance with the request made in the letter of April 12, 1924. The amount of insurance is there limited to $3,000.00, and the defendant knew nothing of any other policies on this property, nor of Pool's purchase, until April 21, 1924, when T. M. Puryear went to see its agent, Sheffield, and stated the situation to him, the status of the title and the nature of his father's interest. At that time, it will be observed, title was in Mrs. Pool and not in Peyton Puryear. Peyton Puryear's interest lay in the fact that he was the benefi-

ciary secured under the trust deed to Hill, trustee, and that right upon his death passed to his executors. After these matters were explained to the agent, he said that he would like to see the trust deed itself, and this T. M. Puryear sent to him. Thereupon these two indorsements bearing date May 13, 1924, were attached to the policy:

"It is understood and agreed that the name of the assured under this policy is Mrs. Susie Pool instead of Peyton Puryear Est. W. H. Sheffield, Agent.

"It is agreed that any loss or damage that may be ascertained and proven to be due the assured under this policy shall be held payable to J. W. Hill, trustee, as his interest may appear, subject, nevertheless, to all conditions of the policy.

"Attached to and forming part of Policy No. 620 of the Home Insurance Company, of New York. W. H. Sheffield, Agent."

With these indorsements attached, the policy was returned to Puryear about the middle of May, 1924. He was not entirely satisfied and consulted two other insurance agents, J. W. Hill, the trustee in the deed to secure his father, and Alfred Hayes, assistant cashier in a bank at Virgilina, where Mr. Puryear did business. This is his evidence on this subject in direct examination:

"43Q. Now, Mr. Puryear, when you got the policy back from Mr. Sheffield what did you then do with it?

"Ans. It had a clause in there that I did not like, and I took it up and showed it to an insurance agent there in town, and it happened that Mr. Hill was there at the time and as he was an insurance agent too I showed it to him, and they said that clause had to be in it as the property was in her name.

"44Q. What is the clause to which you refer?

"Ans. It is understood and agreed that the name of the insured in this policy is Mrs. Susie Pool, instead of Peyton Puryear's estate.

"45Q. That is then the clause that you did not like?

"Ans. Yes, sir.

"46Q. Why did not you like that clause Mr. Purhear?

"Ans. It looked to me that the policy would be in her favor instead of ours.

"47Q. And did you explain to these two insurance agents your objection to this clause and ask them about it?

"Ans. Yes, sir.

"48Q. And what did they tell you about it?

"Ans. They said it had to be in there as she had a deed to the property.

"49Q. State whether or not these insurance agents, or either of them, informed you that this policy did not insure your father's estate?

"Ans. They said the policy was in proper form as she had a deed to the property.

"50Q. Did they tell you or not whether the policy insured your father's estate?

"Ans. They said it did.

"51Q. Now, Mr. Puryear, after having this conversation with these gentlemen, what did you then do with the policy?

"Ans. I took it back home and put it in the safe."

Puryear, himself, paid the premium due on account of this policy, because the Pools said that they could not.

The dwelling so insured was burned on October 12, 1924. It then developed that there was heavy additional insurance thereon, put there by the Pools.

This additional reinsurance has been held to be unenforceable because of misrepresentation. *Royal Insurance Company* v. *Poole*, 148 Va. 363, 138 S. E. 487.

"It is the duty of the insured to promptly examine a fire insurance policy, when he receives it, and to see whether it corresponds with the agreement made therefor. He will not be entitled to the reformation of the policy, so as to make it conform to alleged oral agreements on the part of the soliciting agent of the insurance company, if he retains the policy without objection for an unreasonable time; nor will the inability of the insured to read alter the effect of such retention." *McHoney* v. *The German Ins. Co.*, 52 Mo. App. 94.

This cause, however, as we shall presently see, does not turn upon any question of laches. A case so won carries with it the suggestion that there had been some legal right in the plaintiff, lost because of delay in its assertion, and that principle has no application here. The plaintiffs had no rights to lose.

After the fire, and on April 8, 1925, there was a sale under the trust deed to Hill, the proceeds of which were credited on the Puryear debt, leaving a balance due Peyton Puryear's executors of $1,672.38, with interest from May 16, 1925, and it is this balance which the plaintiffs in this suit seek to recover from the insurance company.

No fraud is charged in the bill, and its suggestion was disclaimed in argument. This is the statement made: "Said policy as written and delivered to complainants, by inadvertence, accident and mistake in writing the same, failed to correctly set forth the said contract of insurance entered into, as aforesaid, for the insurance of Peyton Puryear's estate against loss or

damage by fire to said property, in an amount not exceeding $3,000.00, and the complainants are entitled to have said policy reformed so as to properly and effectually set forth said contract."

The character of the evidence necessary to sustain such charges has frequently been considered by this court.

In *Warner Moore & Co.* v. *Western Assurance Co.*, 103 Va. 391, 49 S. E. 499, the court said: "The law applicable to the controversy here is too well settled to admit of discussion. In fact, there is practically no contention between counsel as to the law of the case, viz: That while a court of equity has jurisdiction to reform and enforce contracts of insurance on the ground of fraud or mistake, relief will not be granted in any case except where there is a plain mistake, clearly made out by satisfactory and unquestionable proof, or the fraud relied on is established by the same degree of proof. *Shenandoah Valley R. Co.* v. [Dunlop] *Dunlap*, 86 Va. 346, 10 S. E. 239, and authorities there cited."

Judge Burks, in *Charles* v. *Charles*, 127 Va. 604, 104 S. E. 823, thus restates the law: "In *Bibb* v. *Amer. Coal Co.*, 109 Va. 261, 264, 64 S. E. 32, 34, it is said 'the existence of the mutual mistake must be conclusively established,' but we prefer the statement of both earlier and later cases that it must be clear, convincing, satisfactory, and such as to leave no reasonable doubt upon the mind that the writing does not correctly embody the intention of the parties. *Holland* v. *Vaughan*, 120 Va. 324, 91 S. E. 122; *Perkins* v. *Herring*, 110 Va. 822, 67 S. E. 515, 19 Ann. Cas. 342; *Percy* v. *First Natl. Bank*, 110 Va. 129, 65 S. E. 475; *Beach* v. *Bellwood*, 104 Va. 170, 51 S. E. 184; *Donaldson* v. *Levine*, 93 Va. 472, 25 S. E. 541; *Carter* v. *McArtor*, 28 Gratt. (69 Va.) 356; 34 Cyc. 984."

Whenever the proof measures up to these requirements reformation will be ordered but not otherwise.

What mistake has the defendant made? It was told in the executor's letter of April 12th: "I want the policy drawn up in favor of Peyton Puryear estate." This was a plain direction to the company and the policy was so written. Afterwards, and when one of the executors had stated the status of his father's interests and that title was in Pool, the name of the assured was changed from "Peyton Puryear Est." to "Mrs. Susie Pool" by an indorsement of May 13, 1924. This change was plainly proper. Mrs. Pool and not "Peyton Puryear Est." owned the property.

A "loss payable" clause was attached at the same time, under which loss, if any, was made payable to Hill, trustee, as his interest might appear. There was no mistake here. The evidence shows that it is the ordinary and usual method adopted to secure such lien indebtedness. Puryear read the policy and consulted two other insurance agents who advised him that it was in common and proper form. Neither before nor after he obtained this advice did he ever intimate to the defendant that he was dissatisfied. There never would have been any trouble at all but for the fact that Pool, in fraud of his rights, and without his knowledge, and without knowledge of the defendant company, heavily overinsured his property in other companies. For this the defendant cannot be held liable.

It is true that there is another "loss payable" clause sometimes used and known as the "Standard Mortgage Clause." The distinction between it and that in judgment is pointed out by Prentis, P., in *New Brunswick F. Ins. Co.* v. *Morris Plan Bank*, 136 Va. 402, 118 S. E. 236. For practical purposes, the differences are these: When

the first is used, it remains within the power of the owner to destroy the security by taking out additional unauthorized insurance. In the second case no such right exists. Both are used in Viriginia, but the first is in the more common use and the latter is attached only when specifically requested.

■ Here the defendant did what is usually done, and gave what it probably thought was wanted and certainly what it intended to give. As we have seen, no expression of dissatisfaction followed. The "Standard Mortgage Clause" may have been better and in the light of subsequent events certainly was, but it was not asked for, and whether asked for or not, was not given and was not intended, while that given was accepted without protest, after a conference with friends and after mature consideration. There was no mutual mistake, there is no equity in the plaintiffs' bill, and the trial court was plainly right.

The decree appealed from must be affirmed, and it is so ordered.

*Affirmed.*