# 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫

## DICKENSON COUNTY BANK, ET ALS. v. ROYAL EXCHANGE ASSURANCE OF LONDON, ENGLAND.

September 17, 1931.

Present, Campbell, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*A. A. Skeen,* for the appellants.

*Roland E. Chase* and *Alexander H. Sands,* for the appellee.

BROWNING, J., delivered the opinion of the court.

This suit is brought to reform a fire insurance policy and to enforce it for the benefit of the complainants in the bill

mentioned, they being, A. A. Steele, the Dickenson County Bank, Inc. and Louverna Fleming, administratrix of the estate of C. P. Fleming, deceased.

In the early part of the year 1921 the said A. A. Steele and C. P. Fleming, constructed a hotel in the town of Clintwood, Virginia, and to procure the money necessary to this project they borrowed from the Dickenson County Bank, Inc., the sum of $12,000.00 and on the 14th of May, 1921, they executed a deed of trust on the said hotel property to secure the Dickenson County Bank the said amount, and therein contracted to carry insurance to the amount of $12,000.00 for the benefit of the said bank.

It is alleged that the owners of the said property applied for insurance through the Fulton Insurance Agency of Norton, Virginia, a general insurance agency for such insurance, and that through the said agency there was placed on the said property insurance amounting to $7,500.00. It was carried by different companies, being divided among them, as is the custom of such agencies. To all of these policies was attached the Union or Standard Mortgage Clause for the benefit of the said bank, and it is further alleged that these policies were renewed from year to year down to the year 1929, and that for the year 1926 three policies for $2,500.00 each were written on said property for the period of one year, one carried by the defendant, Royal Exchange Assurance, and two carried by the American Insurance Company; that when these policies expired in 1927 and were again renewed to extend through a like period of one year to 1928, the one for $2,500.00 written through the defendant company was renewed as it had been previously written, carrying the said Standard Mortgage Clause, another of the said policies for $2,500.00, written through the American Insurance Company, was renewed for a like period which also carried the said Standard Mortgage Clause, and both of these policies were again renewed and extended into the

year 1929, and were in effect at the time the property was destroyed by fire, which was on April 30, 1929. That the third policy for the said sum of $2,500.00, at its expiration date in 1927, was renewed in the following manner, that is to say, it was split or divided into two policies of $1,250.00 each, one of which was carried through the defendant, The Royal Exchange Assurance, extended, by renewal, to the year 1929, and the other was carried through The Eagle Star and British Dominion Insurance Company and by renewal extended to year 1929, both of which were in effect when the said property was destroyed as aforesaid; that the said policy of $2,500.00 which was divided, as above set out, when the division occurred, in the year 1927, written through The American Insurance Company, and carried the Standard Mortgage Clause, and the $1,250.00 policy, part thereof, written through the Eagle Star Company also carried the said Standard Mortgage Clause, but the $1,250.00 policy written through the defendant company did not have the said Union or Standard Mortgage Clause attached thereto nor did its renewal in 1928 which was in force at the time of the said fire; that the absence of the said clause from the said policy was caused by the inadvertence and mistake of the said Fulton Insurance Agency, which omission was unknown to the insured or the Dickenson County Bank, beneficiary in said deed of trust; that thus at the time of the fire there were in force and effect four insurance policies, aggregating the original sum of $7,500.00, three of which carried the said clause, and the one, which is the subject of this contest, did not carry it, but should have, and would have, but for the mutual inadvertence and mistake of the said insurance company and the insured and the beneficiary in the said trust deed, the complainant bank; that all of the policies evolved from the original insurance of 1921 and came down by renewal through the successive years to the date of the destruction by fire; that when the insurance

was originally effected through the said agency, W. W. Pressley, who was the trustee in the said deed of trust and cashier of the said complainant, the complainant bank, notified the said insurance agencies of the indebtedness of the owners of the property and the grantors in the said deed of trust to the said bank, and requested that the said Standard or Union Mortgage Clause should be attached to the insurance policies, carrying the said insurance, for the benefit of the beneficiary in said trust deed, the said bank; that from time to time the said trustee reminded the said agency of the desire of the said bank to keep the said clause attached to the policies of insurance; that it was the intention of the said agency so to do; and that the same was not done, in the case of the policy herein contested, was not known to the insured or said trustee or the said complainant bank until after the fire.

The whole matter in controversy here is absolutely shorn of any charge of fraud on the part of anyone. There is not even a suggestion of it. No question of over insurance. Not a suspicion as to the origin of the fire. No indictment of the good faith of anyone.

The complainants at first instituted an action at law to recover on the said policies which were in effect. It may properly be said here, it appearing in the case, as developed by the briefs, that the insurance money, represented by the policies which carried the Standard Mortgage Clause, was collected by judgment in the said action at law. The complainants alleged that neither their counsel nor themselves at the time of the institution of their suit at law had discovered that the said policy, here contested, did not contain the said Standard or Union Mortgage Clause, and when they were apprised of this omission they applied to the trial court to transfer their cause of action on policy in question to the equity side of said court, presenting their reasons therefor, which application was approved by the court, which resulted in the filing of the bill, first above referred to.

It may here be said that the amount at first claimed in the action at law being in excess of $3,000.00, the defendant insurance company filed its petition for removal of the case to the appropriate Federal court but the subsequent action of the court, at the instance of the plaintiff, transferring to its equity side the $1,250.00 claim, reduced the amount in controversy, which defeated the effort upon the part of the defendant insurance company to remove the cause to the Federal jurisdiction.

The defendant insurance company filed its answer denying, in large part, the allegations of the bill as above detailed and set up affirmative matter to the effect that the title to the hotel property was not as described in the policy of insurance; that Fleming and Steele were not the sole and unconditional owners of the same, their respective wives being co-owners, which fact was concealed from the defendant insurance company; that one of the described owners, C. P. Fleming, was dead at the time the said policy was issued; that the said policy, as written, was the true contract made by the parties and correctly embraced the understanding had between them; and that the complainants had had possession of all of the policies, including the one in question, and should be precluded by lapse of time and delay, from undertaking to assert any right of reformation; that there were liens on the said property in the form of judgments, and suits had been instituted on such judgments to subject the said property to the payment thereof and a decree was had for the sale of said property and there had been an actual sale of same, all of which facts were never made known to the defendant company, and also that the complainants did not comply with the provisions of the said policy with respect to the notice in writing of the said fire, proof of loss, etc.

We note here that the sale referred to was not by public outcry but the property was sold by the said trustee

to the complainants so that it may be fairly said that there was no change, on account thereof, in the ownership of the said property.

The defendant company also filed a demurrer to said bill upon grounds embraced in what has already been said and there is no need to make further mention of this.

The title deeds to the property and the decrees above referred to and papers relating to the various motions made, were filed as exhibits with the bill and answer by the respective litigants and the complainants presented four witnesses whose depositions were taken. There were no witnesses for the defendant insurance company, counsel for both sides filed comprehensive briefs, and on October 14, 1930, the court entered its decree dismissing the complainants' bill and awarding costs to the defendant company, whereupon the complainant moved the court to transfer the cause back to its law side, which motion the said court refused, and the cause was ordered to be stricken from the docket.

We do not think it necessary to take further notice of the said motion to retransfer the cause.

On the 6th day of November, 1930, the complainants aforesaid prepared a bill of review, with which there was an accompanying petition for leave to file the same. It was alleged therein that their counsel accidentally and unexpectedly came into possession of the three insurance policies written on said hotel property for the year of 1927 for the sum of $2,500.00 each and that the said policies substantiated the above allegations as to the Union or Standard Mortgage Clauses being attached thereto; that they were the predecessors of the four policies which were sued upon, including, of course, the policy here being contested; that at the time that the said chancery cause was submitted to the court for hearing and determination they were not in possession of said policies nor were they in pos-

session of any information as to their location or whereabouts and they were unable to produce them at that time; that the same was such after-discovered evidence as the court should take cognizance of; that the complainants or petitioners had not been guilty of fault or negligence in not discovering same; that the said evidence is not cumulative and that its consideration should cause the court to vacate its said decree dismissing their bill and grant the relief originally prayed for, and affidavits of witnesses were filed in support of the allegations of the bill of review and petition.

This petition was denied by the court. Three opinions with authorities were filed by the trial court in support of its rulings in dismissing the complainants' bill, in denying the motion to retransfer the cause to its law side, and in dismissing the petition for the bill of review.

The character of the said opinions warrant the statement that they emanate from a careful, painstaking and able judge.

The arguments and briefs of the counsel for both sides, which were made a part of the record, were elaborate and enlightening, but as applicable to many of the points raised and matters discussed, may be eliminated from our consideration of the issue in the case before us.

The defendant insurance company takes the position in its reply brief that there is only one substantial issue involved which was disposed of by the court under the decree of October 14, 1930, by which the complainants' bill was dismissed for lack of evidence sufficient to entitle them to the relief prayed for.

The reply brief of the complainants reveal that they are quite in agreement that this is the only issue to be considered and determined by this court.

The assignment of error with which we have to deal is that the court erred in not reforming the policy and decreeing recovery in favor of the plaintiff.

■ That the courts have the power to reform written instruments is beyond controversy.

In Ruling Case Law, volume 23, page 309, it is said: "The power to reform instruments is a corollary of the courts power to compel the performance of agreements, fairly and legally entered into, which is one of the peculiar branches of equity jurisdiction. Certain it is that there is no ground on which jurisdiction in equity is more fully established, more important or ancient and more readily entertained and freely exercised."

In Pomeroy's Equity Jurisprudence, volume 4, section 1376, we find the following:

"Equity has jurisdiction to reform written instruments in but two well defined cases: 1. Where there is a mutual mistake—that is, where there has been a meeting of minds—their agreement actually entered into, but the contract, deed, settlement, or other instruments, in its written form, does not express what was really intended by the parties thereto; in such cases the instrument may be made to conform to the agreement or transaction entered into according to the intention of the parties."

Our inquiry here is whether there really was a contract or agreement between the parties to the effect that a Union or Standard Mortgage Clause was to be attached to the policies carrying the insurance on the property which was destroyed by fire, and if there was such an agreement, did it apply to the policy in question, which did not have such clause attached thereto, and was the absence of such a clause from the said policy occasioned by a mutual mistake of the insured and the insurer, and if these elements, necessary to the relief of reformation, exist in the case in judgment, were the complainants guilty of any inequitable conduct or negligence which would preclude them from asserting their right to such relief. All the evidence in the case must be viewed, considered and weighed to find the answer to these queries.

This court has said in the case of *Warner Moore & Co.* v. *Western Assurance Co.*, 103 Va., 391, 49 S. E. 499, 500: "That while a court of equity has jurisdiction to reform and enforce contracts of insurance on the ground of fraud or mistake, relief will not be granted in any case except where there is a plain mistake, clearly made out by satisfactory and unquestionable proof."

And Judge Burks, in *Charles* v. *Charles*, 127 Va., 604, 104 S. E. 823, 825, 23 A. L. R. 943, thus restates the law: "In *Bibb* v. *American Coal Company*, 109 Va., 261, 264, 64 S. E. 32, 34, it is said: 'The existence of the mutual mistake must be conclusively established,' but we prefer the statement of both earlier and later cases that it must be clear, convincing, satisfactory, and such as to leave no reasonable doubt upon the mind that the writing does not correctly embody the intention of the parties." The two cases above as quoted are cited with approval by this court in the recent case of *Puryear* v. *Home Insurance Co.*, 152 Va. 216, 146 S. E. 251, Justice Holt delivering the opinion. The *Puryear Case*, by the way, is relied upon by both parties hereto to sustain certain of their contentions.

At the outset, we bear in mind that the proof must be clear, convincing, satisfactory, and such as to leave no reasonable doubt on the mind that the writing does not correctly embody the intention of the parties.

The uncontradicted testimony on this point satisfies the legal requirements as to its probative value.

The Union or Standard Mortgage Clause in question is as follows:

"Loss or damage, if any, under this policy shall be payable to the Dickenson County Bank, Incorporated, Clintwood, Virginia, as first mortgagee (or trustee) as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein shall not be invalidated by any act or neglect of the mortgagor or owner of the with-

in described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall on demand pay the same."

The testimony of the witnesses, Fulton and Pressley, is criticized by defendant's counsel as vague, uncertain and indefinite and thus of little probative value.

We do not undertake to say that Fulton was an ideal witness. Few persons are. But we must be mindful of the fact that the testimony of these witnesses was not contradicted. That they were not impeached and that their testimony stands for what it is worth. The elder Fulton, who wrote the insurance in the beginning, was dead at the time of the taking of this evidence. The witness appears to have succeeded his father to the business of the Fulton Insurance Agency and he wrote the last renewal policies, of which the policy in question was one. It will be further borne in mind that the witness, Fulton, was the general agent of the defendant company before and at the time he testified.

We find in his testimony four separate and distinct statements that the Union or Standard Mortgage Clause was omitted from the policy in question or the policy to which it was the immediate successor through the error of his agency.

"Q. Have you looked to see that it was omitted on the one previous to that?

"A. Yes, I checked that up in my policy; of course we wrote the previous policy and it was omitted through error, * * *.

"Q. Then as I understand you somewhere in this chain

of policies, the union or standard mortgage clause was omitted from this policy through error, that didn't attract your attention, is that correct?

"A. Yes, that is correct.

\* \* \* \* \* \* \* \* \*

"Q. Look at the other policy containing the mortgage clause and state whether or not you take it that the omission to attach it to this particular policy, whenever it occurred, was a mistake upon the part of the draftsman or writer of the policy?

"A. I believe the same was an error because since the clause had been attached to previous policies, and other policies covering this property."

On cross examination the witness was asked this question:

"Q. When the $2,500.00 policy was canceled, how do you explain how one $1,250.00 policy had the Standard Mortgage Clause, and the other didn't have it?

"A. Because it would seem it was omitted through error."

Again he was examined as follows:

"Q. After you received the notice of the deed of trust and the request for the mortgage clause to be attached to all the policies for the benefit of the Dickenson County Bank, state whether or not it was your intention and your duty to attach this clause on all these policies, and state whether or not you intended to attach these?

"Mr. Chase: Objected to as immaterial and for reasons assigned above.

"A. We received no notice from the insured that there was a mortgage on the property, the only notice I had that there was a deed of trust on the property was by the fact that the mortgage clause had been attached to previous policies; however, if it had been called to my attention that the clause was omitted from this particular contract, I would have seen that same was corrected."

We think it is fair to say that the witness in answering that they, meaning the insurance agency, had received no

notice from the insured that there was a mortgage on the property, meant that such agency had not been notified formally to that effect since the death of his father. It was not at all likely that he, the youth that he was, was conversant with the request or instructions that were given to the agency during the lifetime of the father. That this is so, is clear in the light of the subsequent testimony of the witness, Pressley.

It is significant that the witness states in the same answer that he knew of the existence of the deed of trust by the fact that the mortgage clause had been attached to previous policies and he was frank to say that if his attention had been called to the fact that it was omitted from this particular contract he would have seen that the same was corrected.

If it was not this witness's understanding that it was the intention of the insurer and the insured that the clause should be attached to the particular policy, why would it have been a correction for him to have it attached thereto?

Another question to the same witness:

"Q. From the fact that the mortgage clause is attached to three of these policies, state whether or not you take it that the holder of the deed of trust, the Dickenson County Bank, for whose benefit these clauses were attached, had at some time previous brought knowledge from him to your agency with the request that this mortgage clause be attached, for the benefit of the holder of the deed of trust, in other words, you would not have attached the mortgage clause unless requested to do so?

"A. We knew the policy would be void unless the mortgage clause is attached, and we would consider it our duty to attach it.

"Q. That is one of the duties of your agency to attach the mortgage clause when the mortgagee or holder requests it?

"A. Yes, sir."

The witness, Pressley, in response to appropriate questions stated that he was the cashier of the Dickenson County Bank at the time of the execution of the said deed of trust to secure to his bank the payment of the amount of its loan; that he notified and requested the writer of the insurance to attach the Standard Mortgage Clause to all policies written on the said property for the benefit of his bank; that he had not knowledge that it had not been done in the case of the policy in question; that he asked the said agency to always keep the clause attached for the protection of his bank *and that they said they would do so* and that he relied on them to effect the same; that at the time of the fire the amount of the existing indebtedness to his bank was $9,500.00 which was still due the said bank; that the direction or request made by him to the agency was oral; that the persons constituting the agency were at his bank quite often, sometimes for the purpose of urging the owners of the property insured to pay the premiums and that he would always tell them to see that the mortgage clause was properly attached; that he never examined this particular policy to see if it was attached and when he was asked if this policy had not been in his or his bank's possession since it was issued, he replied that his bank kept an alphabetical file for the policies for the people of the town in its vault, and that this policy was placed in the Fleming file and that Fulton would generally come to the bank and say that he was renewing policies and would take out the old ones and put in the new ones but that he did not examine them; that he regarded the Fultons as perfectly reliable insurance men.

No witness was called by the defendant insurance company to contradict any of these statements. The evidence was not denied and it must be taken as true.

The evidence of the witnesses is not all—the attendant circumstances and connected facts of the case are of potential probative value.

The bank's loan to the insured was a definite and distinct sum. The amount was of sufficient size to justify the agency handling the insurance, as its security (as it did), to divide the amount among four different insurance companies, so that, in the event of loss, the burden would not fall heavily upon any one company. It would be strange indeed to more perfectly secure one portion of a single sum, by the employment of the Standard Mortgage Clause, and not another. The indebtedness had not been discharged by payment; the major part of it was still in existence.

No reason, satisfactory or otherwise, has been given by the insurance company in explanation of the important fact that three of the insurance policies, which were in effect at the time of the fire, carried the said mortgage clause and the one in question did not. In our opinion the only explanation of this apparent anomaly is that it happened, as the witnesses have testified, through inadvertence and mistake upon the part of the insured, the beneficiary and the defendant insurance company. The uncontradicted testimony of the witnesses and the attendant circumstances and facts lead us to this inescapable conclusion. We cannot read and consider the testimony and all the circumstances of the case without being convinced that the intention of all parties to the transaction was that the bank's loan was to be secured by mortgagee's insurance and this could not be effected with the mortgage clause unattached to one of the policies.

This, in our judgment, was the original agreement, and it is just as patent and reasonable that it was applicable to the renewal policies as well as to the original ones.

In Corpus Juris, volume 32, page 1144, section 251, we find the following:

"Also an agreement to renew, in the absence of expressions to the contrary, is presumed to contemplate the same terms and conditions as the existing insurance and

hence does not need to be as certain and definite as to its terms as an agreement to issue a policy; but nevertheless there must be a definite agreement to renew.

We submit that in this case there can be no doubt about the presence of an agreement to renew the policies as long as the indebtedness, or such portion of it as the line of insurance would secure, was in existence. If this is not so why was the insurance kept in force by successive renewals? The indebtedness had not been satisfied, and it would have been vain and senseless not to have kept the insurance in effect. Such a course would not have been in harmony with the original and continued intention of the parties.

In this case there is no conflict of testimony and the facts and the testimony are not of such indecisive character as to raise or leave a reasonable doubt in our minds as to the intention of the parties and as to the real agreement which existed between them.

The evidence shows clearly what the contract between the parties was. It distinctly points out the mistake and shows that it was a mistake of fact and that it was mutual.

That the matter was of vital concern to the bank and was within the terms of the agreement and the understanding between it and the agency, is further evidenced by the fact that the agency, during the period of the insurance, urged the bank to prod the owners into payment of the premiums. It is significant that the clause contained a provision by which the bank agreed to pay the premiums provided the mortgagor or owner neglected to do so.

But it is urged as a defense by the insurance company that the policies were in the possession of the bank and that it was its duty to have examined them as to their provisions and promptly take such steps as it might to have the omission supplied, and the fact that it did not do so impressed its conduct with such negligence as would bar its right to have the policy in question reformed.

The policy was in the Fleming file in the bank's vault. Doubtless the bank could have gone into the file and examined its contents but this would seem unnecessary in the light of the assurance of the agency that it was taking out the old expiring policies and replacing them with the new ones—the renewals. Particularly is this so, as the· bank expressed confidence in the character and efficiency of the agency and relied upon it to carry out the agreement.

Ruling Case Law, volume 23, page 351, section 47:

■ "The fact that insured accepted a policy of fire insurance without noticing a mistake is generally held not to preclude him from having the mistake corrected, even though he failed to read the policy over or carelessly read it. Policies of fire insurance are rarely examined by the insured. The same degree of vigilance and critical examination would not be expected or demanded as in the case of some other instruments, * * * ."

Corpus Juris, volume 32, page 1142, section 249:

■ "Whether the failure of insured to read and examine the policy is such negligence on his part as defeats his right to a reformation depends on the facts and circumstances, it being sometimes held that there is negligence, but more often that there is not."

In the case of *Delaware Insurance Co.* v. *Hill* (Tex. Civ. App.) 127 S. W. 283, cited in 28 L. R. A. (N. S.) 835, it is said:

"And if an assured person accepts a policy without dissent, it is presumed he knows its contents; and the burden is on him in a proceeding to reform it for mistake to prove that he did not know its contents when it was accepted, as by showing that when he received it he put it away without inspection, or that he relied on the insurer's knowledge, and supposed he had drawn it correctly."

The case of *Puryear* v. *Home Insurance Company*, 152 Va. 216, 146 S. E. 251, *supra*, is stoutly relied upon by the

defendant insurance company as authority for its position and contentions. This case is readily distinguishable from the case in judgment. The facts in that case were distinctly different. There, by letter, the representative of the mortgagee's estate directed the insurance agent to do precisely what he did do, and its conduct was known to and accepted by the said representative after consulting with others, without dissent. The court, at page 225 of 152 Va., 146 S. E. 251, 253, said: "Here the defendant did what is usually done, and gave what it probably thought was wanted and certainly what it intended to give."

"As we have seen, no expression of dissatisfaction followed. The 'Standard Mortgage Clause' may have been better and in the light of subsequent events certainly was, but it was not asked for, and whether asked for or not, was not given and was not intended, while that given was accepted without protest, after a conference with friends and after mature consideration. There was no mutual mistake, there is no equity in the plaintiff's bill, and the trial court was plainly right."

It is quite elementary that the general expressions and language in opinions should be considered in the light of the facts of the identical case in which they are employed.

The *Puryear Case*, in our judgment, does not control the present case.

The case of *Hay* v. *Star Fire Insurance Co.*, 77 N. Y. 235, 33 Am. Rep. 607, cited in the reply brief of complainants is very like the present case and very distinctly in point and its holdings are eminent judicial warrant for the position we take in the case in judgment. To quote from it would unnecessarily prolong this opinion.

The case of *Barnes* v. *Hekla Fire Insurance Co.*, 75 Iowa, 11, 39 N. W. 122, 9 Am. St. Rep. 450, is another case distinctly in point and of exceeding value in expositing the law in accordance with our views.

■ In 23 Ruling Case Law, page 347, section 41, it is said:

"If his equity is not met by opposing equities, the court will have less hesitancy in granting the relief asked."

Also see *Dunham* v. *Chatham*, 21 Tex. 231, 73 Am. Dec. 228.

The defendant insurance company failed to meet the equity advanced by the complainants by any opposing equity, which is fortified by evidence.

The law books teem with cases of the character of that in judgment but we deem it needless to multiply authorities.

■ It follows that we think that the trial court erred in declining to grant the relief prayed for and dismissing the complainant's bill. The policy in question must be reformed by attaching thereto the Standard Mortgage Clause. With this done the remaining defenses will be eliminated. The judgment of the trial court is reversed and we here enter judgment for the complainants.

*Reversed and judgment.*